IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

PILEPRO, LLC; PILEPRO SALES
CORPORATION; BLUE EMERALD, INC. f/k/a
Pilepro Inc.; PILEPRO STEEL, L.P.; and
ROBERTO R. WENDT,

        Plaintiffs,

-vs-
                                             Case No.  A-12-CA-829-SS

HUMPHREY CHANG; RICHARD HEINDL;
MATTHIAS WEIGEL; and STEEL WALL,
GMBH,

        Defendants.

---

ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and

specifically Defendant Matthias Weigel's Rule 12(b)(2) Motion to Dismiss for Lack of Personal

Jurisdiction [#38], Plaintiffs PilePro, LLC, PilePro Sales Corporation, Blue Emerald, Inc. f/k/a

PilePro, Inc., PilePro Steel, L.P., and Roberto R. Wendt's Response [#50], and Defendant's

Corrected Reply [#67].  Having reviewed the documents, the governing law, and the file as a whole,

the Court now enters the following opinion and order.

**Background**

Plaintiffs are in the business of manufacturing specialized connectors which join steel sheet

piling together for use in large construction projects in the United States and around the world.  To

protect and promote this business, Plaintiffs hold both U.S. and non-U.S. patents.  Plaintiff, PilePro,

LLC, hired Defendant Weigel to help manage PilePro, LLC's global patent portfolio. Weigel is a German patent attorney, who is from, resides in, and works in Germany.

Plaintiffs brought a complicated civil RICO action against a group of defendants, including Weigel, alleging Humphrey Chang, Richard Heindl, and Weigel devised and engaged in a pattern of racketeering activity to defraud Plaintiffs by misappropriating patent rights, money, and business opportunities. According to the complaint, PilePro, LLC originally owned all the patent rights concerning its business. Chang recommended PilePro, LLC change to become a patent holding company. Chang also recommended PilePro, LLC form one or more additional patent holding companies in other regions of the world, assign patents for those regions to those various holding companies, and establish regional operating companies associated with those holding companies. PilePro, LLC agreed to this reorganization, operating under the understanding PilePro, LLC would control the new, regional holding and operating companies.

At this point, Plaintiffs allege, the wrongdoing occurred. Defendants Chang, Heindl, and Weigel led Plaintiffs Wendt and PilePro, LLC to believe Plaintiffs owned and controlled a newly formed holding company, called Contexo, so the Defendants could transfer PilePro, LLC's patent rights into Contexo. In reality, the holding company would be owned by Defendants, who would use Contexo against PilePro, LLC's interests and as a means of starting a new business, which would compete with PilePro, LLC in the connectors market.

Defendant Weigel's alleged role was as the patent attorney who represented both PilePro, LLC and Contexo, uniquely positioning him to further the fraudulent scheme. According to Plaintiffs, Weigel (1) fraudulently transferred non-U.S. patent rights belonging to PilePro, LLC to Contexo in non-U.S. patent offices, (2) fraudulently registered non-U.S. patents to Contexo, rather

than PilePro, LLC, in non-U.S. patent offices, and (3) falsely led Wendt to believe PilePro, LLC owned and controlled Contexo, including any patents registered in Contexo's name.

Defendant Weigel now brings a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

## Analysis

### I.       Legal Standard:  Rule 12(b)(2)—Personal Jurisdiction

The Federal Rules of Civil Procedure allow a defendant to assert lack of personal jurisdiction as a defense to suit. FED. R. CIV. P. 12(b)(2).  To determine whether a federal district court has personal jurisdiction over a nonresident defendant, the district court considers first whether exercising jurisdiction over the defendant comports with due process.  *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003).  If the requirements of due process are satisfied, the court then determines whether the exercise of jurisdiction is authorized by the jurisdictional "long-arm" statute of the state in which the court sits.  *Id.*  Because the Texas long-arm statute has been interpreted as extending to the limit of due process, the two inquiries are the same for district courts in Texas. *Id.*; *see* TEX. CIV. PRAC. & REM. CODE §§ 17.001–.093.

"The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).  One requirement of due process is that the nonresident defendant be properly subject to the personal jurisdiction of the court in which the defendant is sued. *Id.*

The United States Supreme Court has articulated a two-pronged test to determine whether a federal court may properly exercise jurisdiction over a nonresident defendant: (1) the nonresident

must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).

A defendant's "minimum contacts" may give rise to either specific personal jurisdiction or general personal jurisdiction, depending on the nature of the suit and defendant's relationship to the forum state. *Freudensprung*, 379 F.3d at 343. "A court may exercise specific jurisdiction when (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendant's contacts with the forum state." *Id.* Even when the controversy is not related to the defendant's contacts with the forum state, however, a court may nevertheless exercise general jurisdiction over the defendant if the defendant has engaged in "continuous and systematic contacts" in the forum. *Id.* Of course, if a defendant satisfies neither of these tests, the exercise of personal jurisdiction is not proper. *Int'l Shoe*, 326 U.S. at 316.

The plaintiff has the burden of making a prima facie case by showing a defendant has sufficient "minimum contacts" with the forum state to justify the state's exercise of either specific or general jurisdiction. *Freudensprung*, 379 F.3d at 343. If the plaintiff does so, the burden shifts to the defendant to show such an exercise offends due process because it is not consistent with traditional notions of fair play and substantial justice. *Id.* When a court rules on a 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept the non-moving party's jurisdictional allegations as true and resolve all factual disputes in its favor. *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999).

## II.      Application

### A.      General Jurisdiction

Plaintiffs do not argue Weigel's contacts with Texas are sufficient for the Court to exercise general jurisdiction over Defendant. Therefore, the Court will not address this issue and will focus on whether there are sufficient contacts to exercise specific jurisdiction over Defendant.

### B.      Specific Jurisdiction

#### 1.      A mere contract is insufficient to establish specific jurisdiction

Defendant's motion for lack of specific jurisdiction boils down to a few simple arguments. First, Weigel argues he only had an attorney–client relationship with one of the plaintiffs, PilePro, LLC, and throughout the entire course of this relationship, PilePro, LLC was a Delaware corporation headquartered in South Dakota, not Texas. Accordingly, Weigel contends, he is not subject to specific jurisdiction in Texas. Second, Weigel is a German and European patent attorney practicing in non-U.S. patent offices. The alleged wrongdoing, which Defendant limits to the fraudulent transfer of non-U.S. patent rights and the fraudulent registration of non-U.S. patent rights, occurred entirely outside the U.S. No cause of action of action based on this conduct arises out of, or relates to, Weigel's forum-related activities in Texas. Third, to the extent Plaintiffs rely on Defendant's contacts with Texas such as business visits to Texas and communications with Plaintiffs while they were in Texas, these are insufficient to establish specific jurisdiction. Moreover, no cause of action arises out of these visits and communications; all alleged wrongdoing arises out of activity occurring outside of the U.S.

If Plaintiffs were merely asserting jurisdiction based on the existence of an attorney–client relationship and contacts such as invoices, phone calls, emails, and even physical visits, Defendant

would be correct in asserting this Court lacks jurisdiction. The Fifth Circuit has made clear "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986). Based on this principle, the Fifth Circuit has also held "[t]he bare existence of an attorney–client relationship is not sufficient" to create minimum contacts. *Trinity Indus., Inc. v. Myers & Assocs., Ltd.*, 41 F.3d 229, 230 (5th Cir. 1995). A more detailed examination of *Holt Oil* and *Trinity Industries* reveals personal jurisdiction in this case cannot be asserted based on this line of cases.

In *Holt Oil*, the defendant, a resident of Oklahoma, contracted with a Texas corporation. 801 F.2d at 778. The Fifth Circuit downplayed the importance of the contract, noting the contract's choice-of-law provision opting for Oklahoma law to apply. *Id.* The court was also unimpressed by the defendant's mailing of three checks to Texas as payment under the contract, and by phone calls and letters between the two parties. *Id.* Accordingly, the court concluded these contacts were insufficient to support an exercise of specific jurisdiction. *Id.*

Similarly, in this case, Defendant's contacts with Texas in the form of the attorney–client relationship, emails, phone calls, invoices, and even his two physical trips to Austin are not sufficient, by themselves, to establish specific jurisdiction in Texas. This is especially true when, in contrast to *Holt Oil* where the contract was formed with a Texas corporation in Texas, the contract in this case was formed with a Delaware corporation doing business in South Dakota. Weigel began serving as a patent attorney for PilePro, LLC in 2004 and continued in that capacity until July 4, 2010. In July 2007, Wendt, the managing member of PilePro, LLC, personally moved to Austin. Since Wendt lived in Austin, and Richard Heindl—Weigel's main contact to PilePro, LLC—lived in Austin for seven months from 2009 to 2010, Weigel had contacts with Austin in the form of

phone calls, emails, invoices, and two trips to Austin. PilePro, LLC did not officially become a Texas operation until 2010 after Weigel ceased working for PilePro, LLC.

*Trinity Industries* is a more compelling case for the exercise of specific jurisdiction here but still is insufficient. While the court there recognized the general rule against exercising jurisdiction on the "bare existence of an attorney–client relationship," the court went on to find the exercise of personal jurisdiction proper based on the nonresident law firm's lengthy representation of the Texas plaintiffs in patent matters, communications with the plaintiffs in Texas, billing of the plaintiffs and receipt of payments from Texas, and occasional physical meetings and hearings in Texas. 41 F.3d at 230–31. The Fifth Circuit concluded "the defendants deliberately availed themselves of the benefits of an ongoing relationship with a Texas client and reasonably should have anticipated being haled into court in Texas for claims arising out of that relationship." *Id.* at 231; *see also id.* at 232 ("Assuming minimum contacts exist, as they do herein, a lawyer accused of violating his or her professional obligations to a client is answerable not only where the alleged breach occurred but also where the professional obligations attached. In this instance, that attaching was within the state of Texas.") (footnote omitted).

Arguably, the same is true here. Defendant "voluntarily assumed and continued the obligation of representing the Texas client[s]," and his representation, communications with, billing of, and receipt of payments from those Texas clients is enough to establish a prima facie case for exercising personal jurisdiction. *Id.* at 231 (finding personal jurisdiction existed over attorneys who completed "several patent applications" on behalf of Texas client over a two-year period). Again, the key difference in this case, however, is the fact PilePro, LLC was a Delaware corporation doing business in South Dakota throughout the entire course of the attorney–client relationship between

PilePro, LLC and Weigel.  Weigel did engage in activity with Texas, but this was due to Wendt and Heindl's presence there.  The "attaching" in this case occurred in South Dakota, and much of the work was done while Plaintiff, presumably, operated out of South Dakota.  This case is a close call because Weigel certainly had extensive contacts with Texas due to the fact PilePro, LLC's decision makers—Wendt and Heindl—lived in Austin, Texas for periods of time during Weigel's representation of PilePro, LLC. It can well be argued "the defendant[] deliberately availed [himself] of the benefits of an ongoing relationship with a Texas client and reasonably should have anticipated being haled into court in Texas for claims arising out of that relationship."  But, because PilePro, LLC was still a Delaware corporation doing business out of South Dakota throughout the attorney–client relationship, the Court declines to assert personal jurisdiction under this rationale.

### 2.    Intentional torts can be a sufficient basis for specific jurisdiction

In the alternative, non-resident defendants purposefully avail themselves of the privilege of acting in a forum state when the content of their communications gives rise to intentional torts. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999).  As Defendant fairly characterizes Plaintiffs' "core" argument, "Plaintiffs attempt to show: (1) that Weigel made an affirmative misrepresentation of fact while in Texas or in e-mails directed to Wendt in Texas and/or (2) that Weigel concealed information or a purported conflict of interest while in Texas or in e-mails directed to Wendt in Texas."  Def.'s Reply [#67], at 6.  If Plaintiffs can make a prima facie case of misrepresentation or concealment occurring in Texas, then the burden shifts to the defendant to show why the exercise of specific jurisdiction would offend due process.  Importantly, since the Court is not holding an evidentiary hearing, it must accept Plaintiffs' jurisdictional allegations as true and resolve all factual disputes in their favor. *Guidry*, 188 F.3d at 625.

Plaintiffs, in their response, go beyond the contractual relationship and rely on a line of cases from the Fifth Circuit, which hold "a single act . . . directed toward Texas that gives rise to a cause of action . . . can support a finding of minimum contacts." *Wien Air*, 195 F.3d at 211 (citing *Calder v. Jones*, 465 U.S. 783 (1984); *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993)). In determining whether specific jurisdiction exists, courts may consider the "foreseeable effects of a tort," though "[f]oreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum." *Id.* at 212. Purposeful availment may be found where "the actual content of communications with a forum gives rise to intentional tort causes of action." *Id.* at 213.

In *Wien Air*, a Texas corporation sued its German attorney, who conducted most of his business through foreign meetings, correspondence and communications to Texas, and a set of meetings in Texas. *Id.* at 210. According to the plaintiff's allegations, the attorney performed several tortious actions outside of Texas directed towards the corporation in Texas. *Id.* at 212. These acts included letters, faxes, and phone calls whose contents contained fraudulent misrepresentations and whose contents failed to disclose material information. *Id.* The court, denying the motion to dismiss for lack of personal jurisdiction, found these communications had foreseeable effects in the forum and were directed at the forum. *Id.* The attorney disputed the number and content of the communications and argued there was no evidence that the content related to or gave rise to any cause of action. *Id.* The court responded: "At this stage, however, any conflict between the plaintiff and defendant with respect to the content and existence of these communications must be construed in favor of [the plaintiff]. As such, the prima facie evidence indicates that [defendant] directed affirmative misrepresentations and omissions to the plaintiff in

Texas." *Id.* The *Wien Air* court proceeded to analyze examples in other circuits where personal jurisdiction was properly exercised. *See, e.g., Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141 (3d Cir. 1992) (finding minimum contacts where the defendant directed letters and phone calls to the forum and then went to the forum for a final meeting in which he failed to advise his client of material facts regarding conflicts of interest); *Diamond Mortg. Corp. v. Sugar*, 913 F.2d 1233, 1245–47 (7th Cir. 1990) (finding the fact the lawyer continually communicated with the forum while steadfastly failing to disclose material information shows purposeful direction of material omissions to the forum state when the claim arises from a breach of fiduciary duty based on a failure to disclose material information).

Similarly, in this case, Plaintiffs make a prima facie case for misrepresentation and material omissions by the Defendant in his communications with Plaintiffs. First, Plaintiffs allege Weigel was hired to be a patent attorney for both PilePro, LLC and Contexo, and during his visit to Austin in February 2010, worked on legal matters directly related to the core of Plaintiffs' claims. Wendt Decl. [#50-1], ¶¶ 18, 21. In his declaration, Weigel states he worked on (1) the transfer of non-U.S. patent rights to Contexo, (2) matters relating to a particular patent in connection with some potential litigation regarding this patent, and (3) general "housekeeping" of PilePro's patent portfolio. Weigel Decl. [#39], ¶ 32. Wendt alleges Weigel, through the course of this trip and the related work, failed to disclose certain facts including: (1) the fact PilePro, LLC did not own or control any interest in Contexo, (2) the fact transferring the non-U.S. patent rights to Contexo would result in Plaintiffs losing all rights in those patents, (3) the fact Contexo could assert Plaintiffs did not have the right to produce and sell its modular connectors in Europe and other countries, (4) the fact Contexo intended to sell a certain patent, which Plaintiffs believed to be very valuable, for nominal

consideration, (5) the fact Heindl claimed to be the sole owner of Contexo, and (6) the fact Weigel was representing Heindl's interests through Contexo.  Wendt Decl. [#50-1], ¶¶ 19–20.

Furthermore, Plaintiffs allege Weigel continued his fraudulent behavior via email communications after his February 2010 trip to Austin.  The nature of these allegations and the fraud committed are similar to the alleged misrepresentations and omissions from the trip to Austin. Plaintiffs attach sample emails to demonstrate their point. Pls.' Resp. [#50], at 15–16 (pointing the Court to eight sample emails and alleging various misrepresentations and omissions).

Defendant disputes most, if not all, of these allegations. Defendant primarily argues a failure of proof to establish a prima facie case of personal jurisdiction because of inconsistencies in Plaintiffs' affidavits in different proceedings arising out of this dispute.  Specifically, Defendant argues: (1) Wendt knew neither he nor PilePro "controlled" Contexo and (2) Weigel had no knowledge of the alleged information he concealed.  Def.'s Reply [#67], ¶¶ 95–99.  In short, Defendant raises various factual disputes, which Defendant argues nullify any alleged jurisdictional facts establishing specific jurisdiction.  The Court, however, at this stage is obligated to accept Plaintiffs' jurisdictional allegations as true and resolve all factual disputes in their favor. Defendant's disagreements on the merits of the case are not to be addressed at the Rule 12 stage.

Accordingly, the Court finds Plaintiffs have established a prima facie case, and "the burden shifts to the defendant to show the assertion of jurisdiction would be unfair." *Wien Air*, 195 F.3d at 215. "It is rare to say the assertion is unfair after minimum contacts have been shown." *Id.* Defendant, in his motion and reply, does not argue the exercise of jurisdiction would offend due process, and therefore he has not made the required "'compelling case'" against the exercise of jurisdiction here. *See id.* (quoting *Burger King*, 471 U.S. at 477).

**C.      Jurisdiction under RICO**

Plaintiffs alternatively argue personal jurisdiction is proper under RICO's nationwide service of process provisions.  Because the Court finds specific jurisdiction in Texas exists, as articulated above, it declines to address the merits of this argument at this time.

**D.      Jurisdiction under FRCP 4(k)(2)**

Plaintiffs alternatively argue personal jurisdiction is proper under Federal Rule of Civil Procedure 4(k)(2).  Because the Court finds specific jurisdiction in Texas exists, as articulated above, it declines to address the merits of this argument at this time.

**Conclusion**

The Court finds Plaintiffs have made a prima facie case for the exercise of personal jurisdiction over Defendant, and Defendant has not shown the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice.

Accordingly,

It is ORDERED that Defendant Matthias Weigel's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction [#38] is DENIED.

SIGNED this the **30** day of September 2013.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE