IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

PILEPRO, LLC; PILEPRO SALES
CORPORATION; BLUE EMERALD, INC. f/k/a
Pilepro Inc.; PILEPRO STEEL, L.P.; and
ROBERTO R. WENDT,
        Plaintiffs,

-vs-                                          Case No. A-12-CA-829-SS

HUMPHREY CHANG; RICHARD HEINDL;
MATTHIAS WEIGEL; and STEELWALL,
GMBH,
        Defendants.

## ORDER

BE IT REMEMBERED on the 7th day of January 2015, the Court held a hearing in the above-styled cause, and the parties appeared by and through counsel. Before the Court is Defendant Humphrey Chang's Motion to Disqualify Counsel [#83],[1] Plaintiffs' Response [#86], Chang's Reply [#89], Plaintiffs' Notice to the Court of Plaintiffs' Intent to Use Additional Case Law at the Hearing on the Motion to Disqualify [#91], Plaintiffs' Corrected Supplemental Declaration [#95], and Chang's Objection and Response [#96]. Having reviewed the documents, the relevant law, and the file as a whole, the Court now enters the following opinion and orders GRANTING the motion.

---

[1] Chang indicates the other Defendants in this matter—Richard Heindl, Matthias Weigel, and Steelwall, GmbH—have joined Chang in the motion to disqualify by and through their counsel of record. *See* Motion Disqualify [#83] at 2.



## Background

**I.     Procedural History of this Case**

Plaintiffs in this case are: (1) PilePro, LLC, (2) PilePro Sales Corporation (PilePro Sales or PilePro), (3) Blue Emerald Inc., f/k/a PilePro, Inc., (4) PilePro Steel, LP, and (5) Roberto Wendt. Plaintiffs have sued the following Defendants: (1) Humphrey Chang, (2) Richard Heindl, (3) Matthias Weigel, and (4) Steelwall, GmbH. Plaintiffs are in the business of manufacturing specialized connectors which join steel sheet piling together for use in large construction projects in the United States and around the world. The lawsuit is a complicated civil RICO case alleging Chang, Heindl, and Weigel devised and engaged in a pattern of racketeering activity to defraud Plaintiffs by misappropriating patent rights, money, and business opportunities. In short, Plaintiffs allege Defendants Chang, Heindl, and Weigel led Plaintiffs Wendt and PilePro to believe Plaintiffs owned and controlled a newly formed holding company called Contexo, so the Defendants could transfer PilePro's patent rights into Contexo. In reality, the holding company would be owned by Defendants, who would use Contexo against PilePro's interests and as a means of starting a new business, which would compete with PilePro in the connectors market.

Plaintiffs, beginning with the complaint filed September 7, 2012, were initially represented by lawyers from the law firm, Haynes and Boone LLP. *See* Compl. [#1] at 114 (showing Barry F. McNeil and Leslie C. Thorne from Haynes and Boone as the attorneys for Plaintiffs). Soon thereafter, lawyers from the law firm, Boies, Schiller & Flexner, LLP (Boies Schiller), made appearances on behalf of Plaintiffs. *See* Orders of Sept. 24, 2012 [##5, 6] (granting motions to appear pro hac vice by Thorne for attorneys Lee S. Wolosky and Douglass A. Mitchell from Boies Schiller). These attorneys remained as the only counsel for Plaintiffs for over two years until

October 10, 2014, when the Court granted a motion to appear pro hac vice on behalf of Plaintiffs filed by Micah F. McBride from the law firm, Shumway Van and Hansen (SVH). *See* Order of Oct. 10, 2014 [#77]. On October 17, 2014, McBride and his colleague from SVH, Michael C. Van, moved to be substituted as attorneys of record for Plaintiffs, and further moved Mitchell and Wolosky of Boies Schiller and McNeil and Thorne of Haynes and Boone be permitted to withdraw. *See* Corrected Mot. Withdrawal and Substitution Counsel [#79]. Defendants opposed the motion on the grounds of a conflict of interest. *See id.* at 4. Van filed his Notice of Appearance [#80] on October 20, 2014, and the Court granted the motion for withdrawal and substitution of counsel on November 7, 2014. Order of Nov. 7, 2014 [#81]. Approximately seventeen days later on November 24, 2014, Defendants filed the instant motion to disqualify SVH as counsel for Plaintiffs on the ground SVH, including Michael Van as lead counsel, represented jointly Chang, PilePro, and Wendt in a previous lawsuit filed in Nevada state court and should therefore not be allowed to represent PilePro and Wendt in this case suing Chang. *See* Mot. Disqualify [#83].

II.   **SVH's Previous Representation of Chang**

The Nevada case involved Plaintiff PilePro suing a defendant named Mark Lenzi (the Lenzi Case). *See PilePro Sales Corp. v. Lenzi*, No. A-10-629596-C (Nev. Dist. Ct., filed Nov. 17, 2010). The case involved alleged fraud related to an entity known as SP Network, LLC, and the time frame of the events in question was 2007 through late 2010. Chang became a party in the case in December 2010 when Lenzi filed his Answer and Counterclaims and included counterclaims against Chang as the CFO of PilePro Sales. *See* Mot. Disqualify [#83-2] Ex. 2 (Chang Decl.), Ex. B (Lenzi's Answer). SVH, counsel for PilePro, became counsel for Chang, and PilePro paid Chang's legal fees. Chang Decl. ¶¶ 6–7. According to Lenzi's allegations, he founded and owned SP

Network in order to perform engineering consulting and create a steel piling advertising and promotional website for the steel industry. Lenzi's Answer ¶ 10. PilePro advertised its products on the website. *Id.* ¶ 12. Through a series of events, a dispute over operation and ownership of SP Network emerged between Lenzi and PilePro (in the form of its chief executive officer (CEO), Wendt, and its chief financial officer (CFO), Chang). *Id.* ¶¶ 16–17. Lenzi alleges Chang filed false articles of dissolution for SP Network with the Nevada Secretary of State and fraudulently transferred five internet domain names belonging to SP Network to a fictional entity called "Sanjay Tharani." *Id.* ¶¶ 21–22.

According to Chang, he had substantial contact with SVH attorneys and staff "who had unfettered access to information, facts, acts, events and transactions during my tenure as CFO of PilePro Sales." Chang Decl. ¶ 17. Chang estimates he spent approximately seven or eight hours in personal meetings with SVH attorneys, and Van was present for at least four of those hours. *Id.* ¶ 18. He also estimates he participated in between ten and twenty conference calls with SVH attorneys, usually on Fridays, with each lasting between twenty and ninety minutes. *Id.* Chang recalls Van typically was on these calls. *Id.*

According to Van, Chang "was actively involved in providing the factual basis of PilePro's Complaint and against the Lenzis, as he was the CFO of PilePro Sales and had firsthand information concerning the Lenzis' actions." Resp. [#86-1] Ex. 1 (Van Decl.) ¶ 5. Van only recalls one in-person meeting with Chang and notes there were others present. Van's Corrected Supp. Decl. [#95] ¶ 12. Van also remembers occasional conference calls with Chang and other individuals regarding the Lenzi Case. *Id.* ¶ 13.

On April 20, 2011, during the pendency of the Lenzi Case, PilePro Sales fired Chang as its CFO "[a]fter an investigation conducted by PilePro LLC uncovered misconduct and malfeasance" by Chang. Am. Compl. [#7] ¶ 118. The "misconduct and malfeasance" concerned Chang's alleged fraud at the heart of the RICO lawsuit currently before this Court. After Chang's firing, SVH continued to represent PilePro, Wendt, and Chang in the Lenzi Case as reflected in PilePro's First Amended Complaint and Counterclaims filed June 9, 2011. *See* Chang Decl., Ex. D. In relevant part, this filing provided: "Counterclaimants Humphrey Chang and Roberto Wendt, by and through their counsel of record, Michael C. Van, Esq., of the law firm of SHUMWAY VAN & HANSEN, CHTD., hereby allege the following counterclaim . . . ." *Id.* at 26. Van proceeded to allege four counterclaims on behalf of Chang and Wendt in addition to those asserted on behalf of PilePro, and Van signed the pleading as counsel along with Chatree M. Thongkham, a colleague at SVH; no other lawyers are listed as counsel for these parties on this particular filing. *Id.* at 30.

At no time during SVH's joint representation of PilePro, Wendt, and Chang did SVH present Chang with a conflict waiver. Chang Aff. ¶ 15. Eventually on July 11, 2011, Van and the lawyers of SVH withdrew as Chang's counsel. *Id.* ¶ 14. After SVH withdrew, Chang proceeded in the Lenzi Case *pro per* until May 2012 when the parties settled.

## Analysis

I. **Motion to Disqualify—Legal Standard**

A. **Choice of Law**

"When considering motions to disqualify, courts should first look to 'the local rules promulgated by the local court itself.'" *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009) (quoting *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995)). The Local Rules

of the Western District of Texas, in a section titled "Discipline of Attorneys," provide "[m]embers of the bar of this court and any attorney permitted to practice before this court must comply with the standards of professional conduct set out in the Texas Disciplinary Rules of Professional Conduct . . . ." Local Rule AT-7(a).

The Fifth Circuit has made clear, however, the Texas Rules "'are not the sole authority governing a motion to disqualify.'" *ProEducation*, 587 F.3d at 299 (quoting *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992)); *see also In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992) ("The district court clearly erred in holding that its local rules, and thus the Texas rules, which it adopted, are the 'sole' authority governing a motion to disqualify."). In *Dresser*, the court explained "[m]otions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law." *Id.* (citing *Woods v. Covington Cnty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976)). In contrast, "[t]he district court's authority to promulgate local rules is derived from 28 U.S.C. § 2071, which allows the courts only to adopt 'rules for the conduct of their business.'" *Id.* "Thus, although the district court should determine rules for the conduct of attorneys for the purpose of identifying conduct subject to sanctions, its local rules alone cannot regulate the parties' rights to counsel of their choice." *Id.*

**B.   Applicable Standards**

   **1.   The Texas Rules, the Model Rules, and their Role in this Court's Analysis**

While a motion to disqualify is a substantive motion decided under federal law, a reviewing court also "'consider[s] the motion governed by the ethical rules announced by the national profession in light of the public interest and the litigants' rights." *ProEducation*, 587 F.3d at 299 (quoting *Amer. Airlines*, 972 F.2d at 610). In *Dresser*, the Fifth Circuit indicated its "precedents

have applied the ethical canons contained in the ABA [American Bar Association] Model Code." *Amer. Airlines*, 972 F.2d at 610 (citing *Dresser*, 972 F.2d at 943). Therefore, the Court considers both the Texas Rules and the ABA's Model Rules.

Texas Rule 1.09 states in relevant part:

(a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:

. . .

(2) if the representation in reasonable probability will involve a violation of Rule 1.05 [prohibiting a lawyer's use of confidential information obtained from a former client to that former client's disadvantage]; or

(3) if it is the same or a substantially related matter.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09, 1.05, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A, art. 10, § 9 (Vernon 2005).[2]

In *Dresser*, the Fifth Circuit stated "[o]ur source for the standards of the profession have been the canons of ethics developed by the [ABA]," and "[o]ur most far-reaching application of the national standards of attorney conduct to an attorney's obligation to avoid conflicts of interest is *Woods v. Covington Cnty. Bank* . . . ." *Dresser*, 972 F.2d at 543. In *Woods*, the court held "standards such as ABA canons are useful guides but are not controlling in adjudicating such motions." *Id.* at 543–44 (citing *Woods*, 537 F.2d at 804). Whether it be the Texas Rules or the Model Rules, the Fifth Circuit has stated "inflexible application of a professional rule is inappropriate because frequently it would abrogate important societal rights, such as the right of

---

[2] The current version of the Texas Rules became effective January 1, 1990. *See ProEducation*, 587 F.3d at 300 n.2 (citing *Clarke v. Ruffino*, 819 S.W.2d 947, 949 (Tex. App.—Hous. [14th Dist.] 1991, writ dism'd w.o.j.)).

party to his counsel of choice and an attorney's right to freely practice her profession." *U.S. Fire*, 50 F.3d at 1314 (citing *Woods*, 537 F.2d at 813). For instance, societal rights considered and balanced in *Woods* were whether a conflict has (1) the appearance of impropriety in general or (2) a reasonable possibility that a specific impropriety has occurred, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case. *Dresser*, 972 F.2d at 543 (citing *Woods*, 537 F.2d at 812–13).

The Fifth Circuit has made clear: "'The rule of disqualification is not mechanically applied in this Circuit.'" *U.S. Fire*, 50 F.3d at 1314 (quoting *Church of Scientology of Ca. v. McLean*, 615 F.2d 691, 693 (5th Cir. 1980)). Relatedly, "[a]ll of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." *Id.*

2. **The Substantial Relationship Test and the Irrebuttable Presumption a Lawyer Acquires the Confidences of his Client**

Focusing on Fifth Circuit precedents, cases involving prior representations have been governed by the "substantial relationship" test. *See Am. Airlines*, 972 F.2d at 614. This test instructs:

> A party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: (1) an actual attorney–client relationship between the moving party and the attorney he seeks to disqualify and (2) a substantial relationship between the subject matter of the former and present representations.

*Id.* (citing *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1569 (5th Cir. 1989); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1341, 1345 (5th Cir. 1981); *Duncan v. Merrill Lynch, Pierce, Fenner & Smith*, 646 F.2d 1020, 1028 (5th Cir. 1981)). The party seeking

disqualification bears the burden of proving the present and prior representations are substantially related. *See id.* (citing *Duncan*, 646 F.2d at 1028).

"Once it is established that the prior matters are substantially related to the present case, 'the court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation.'" *Id.* (quoting *Duncan*, 646 F.2d at 1028; *Corrugated Container*, 659 F.2d at 1347). While the test is categorical in requiring disqualification upon satisfaction of the substantial relationship standard, it should not be applied "in a mechanical way that might 'prevent[] an attorney from ever representing an interest adverse to that of a former client.'" *Id.* (citing *Duncan*, 646 F.2d 1027–28). "Rather, a substantial relationship may be found only after 'the moving party delineates with specificity the subject matters, issues and causes of action' common to prior and current representations and the court engages in a 'painstaking analysis of the facts and precise application of precedent.'" *Id.* (citing *Duncan*, 646 F.2d at 1029) (internal quotation omitted)).

### 3.   Actual Disclosure of Confidential Information

The substantial relationship test is not the only legal basis for disqualification when there is a prior representation. As the Fifth Circuit has explained, a moving party may satisfy its burden by showing the matters are substantially related "'or by pointing to specific instances where it revealed relevant confidential information regarding its practices and procedures.'" *Am. Airlines*, 972 F.2d at 615 (quoting *Duncan*, 646 F.2d at 1032). In this way, the Fifth Circuit precedents mirror Texas Rule 1.09(a)(2)–(3). *See id.* ("Rule 1.09 . . . forbids a lawyer to appear against a former client if the current representation in reasonable probability will involve the use of confidential information *or* if the current matter is substantially related to the matters in which the lawyer has represented the

former client. . . . The Rules are not broader than the protections provided by [Fifth Circuit] precedents.").

## II. Application

Chang has asserted two grounds for disqualification: (1) the current lawsuit and the Lenzi Case qualify as "substantially related," and (2) SVH's representation of Plaintiffs in this matter in all probability will involve SVH using Chang's confidential information acquired during the Lenzi Case to Chang's disadvantage.

### A. Ground One: The Substantial Relationship Test

To satisfy the substantial relationship test, Chang must establish (1) an actual attorney–client relationship between Chang and SVH, and (2) a substantial relationship between the subject matter of the former and present representations. Chang can easily satisfy the first prong because the parties do not dispute Van and SVH represented Chang in the Lenzi Case. The contested question is whether there is a substantial relationship between the subject matter of the Lenzi Case representation and the present representation. Chang has the burden to specifically delineate the matters, issues, and causes of action common to these two representations, and the Court then engages in a painstaking analysis of the facts and precise application of precedent. *See Am. Airlines*, 972 F.2d at 614 (citing *Duncan*, 646 F.2d at 1029) (internal quotation omitted)). The subject matter "'does not need to be relevant in the evidentiary sense to be substantially related. It need only be akin to the present action in a way reasonable persons would understand as important to the issues involved.'" *Id.* (quoting *Corrugated Container*, 659 F.2d at 1346).

At a general level, Chang points out the claims and defenses in the Lenzi Case all involved his work as the CFO of PilePro Sales just as the claims and defenses involved in this lawsuit involve

his work as CFO of PilePro Sales. Chang Decl. ¶ 8. Additionally, both cases involve alleged fraud committed by Chang in his role as CFO of PilePro Sales. Both cases cover roughly the same time frame from 2007 through 2010 (the Lenzi Case) or 2011 (the instant case). In his declaration, Chang describes topics discussed with SVH during the Lenzi Case and how they overlap with issues alleged in this lawsuit. *Id.* ¶¶ 24–27. As Chang highlights, both cases involve allegations regarding how Chang managed and documented fund and intellectual property movements to an outside entity (SP Network in the Lenzi Case and Wall Profile GmbH in this case). *Id.* ¶ 26. During the Lenzi Case, SVH learned from Chang "all aspects of [his] policies and methods of operation as a CFO," "how [he] controlled monies and funds and . . . how [he] analyzed issues of fraud, ownership, title, funding documentation and eventual divestiture." *Id.* ¶ 27.

Chang compares issues arising in the Lenzi Case which Chang and SVH discussed to specific paragraphs in Plaintiffs' Amended Complaint [#7], such as: (1) the "Business Problems" identified in paragraph 102; (2) the business goals, practices, and decisions Chang made as CFO in paragraph 115(a); (3) the manner in which Chang managed the flow of money and other assets of PilePro Sales, or any of the other PilePro Plaintiffs, in paragraph 115(b); and (4) Chang's influence on business decisions and activities of PilePro Sales and other PilePro Plaintiffs in paragraph 115(f). Chang Decl. ¶ 24(g). Chang highlights paragraph 155 of the Amended Complaint, which describes Chang's alleged "Reorganization Scheme" whereby Chang suggested any new entity not carry any derivation of the "PilePro" name and should be held in "individuals'" names. *Id.* ¶ 24(i); Am. Compl. [#7] ¶ 155(c). Similar methods were allegedly used in the Lenzi Case regarding SP Network and its domain names. Chang Decl. ¶ 24(i). Plaintiffs allege Chang engaged in a "License Fee Scheme"

and "License Fee Predicate Acts," and similar fund movements were alleged in the Lenzi Case. *Id.* ¶ 24(j).

In response, Plaintiffs argue "the claims involved in [the Lenzi Case] are wholly unrelated to any claims made against Chang concerning his individual improper actions with Richard Heindl, Matthias Weigel and Steelwall, GmbH outside the scope of his duties as Chief Financial Officer of PilePro." Van Decl. ¶ 6. Similarly, Plaintiffs claim "[t]his dispute is both factually and legally dissimilar to [the Lenzi Case] in every respect." Resp. [#86] at 4. Plaintiffs contend, beyond the similarities of fraud allegations relating to Chang as CFO of PilePro Sales, these cases relate to an entirely different set of circumstances; whereas the Lenzi Case dealt with SP Network and the disputed ownership of websites, this case concerns Chang's scheme with his co-Defendants to fraudulently transfer patents from PilePro to Contexo. *Id.* at 4–5.

The Court concludes the two representations are substantially similar. As Chang has demonstrated, both cases involved allegations of fraud against Chang based on his activity as CFO of PilePro Sales over the same time frame. While it is true there are differences between the two cases concerning the precise factual circumstances, entities, and actors, the test is not whether the cases are the same but rather whether they are "substantially related." As Chang's counsel in the Lenzi Case, SVH had total access to Chang's brain regarding how he operated as CFO, how he moved funds, how he transferred intellectual property rights, how he formed separate entities, and anything else the lawyers wanted to know. In his declaration, Chang effectively compared the allegations of the Lenzi Case with specific paragraphs of Plaintiffs' amended complaint and showed the subject matter of the former is akin to the latter "in a way reasonable persons would understand as important to the issues involved." *Am. Airlines*, 972 F.2d at 614 (citing *Corrugated Container*,

659 F.2d at 1346). Furthermore, the Court is not persuaded by Plaintiffs' arguments, which make no real effort to rebut Chang's comparisons and simply state in a conclusory fashion that the two cases have absolutely nothing to do with each other despite their clear similarities.[3]

Having satisfied the substantial relationship test, the Court, following *American Airlines*, irrebuttably presumes SVH acquired Chang's confidential information. And while one purpose of the irrebuttable presumption is to eliminate the need for the Court to examine a factual record on this point, the Court notes the factual record before it shows SVH was indeed exposed to confidential information. Therefore, Chang has satisfied his burden, and SVH must be disqualified as counsel in this case.

## B.    Ground Two: Actual Disclosure of Confidential Information

Even assuming, however, the two representations were not substantially related, the Court finds SVH should also be disqualified on the alternative ground its representation of Plaintiffs in this case would in reasonable probability involve the use of Chang's confidential information against him. As described above, Chang had numerous personal and telephonic meetings with SVH attorneys and staff. Through the course of those interactions, SVH learned from Chang a host of information relating to Chang's work as CFO for PilePro Sales. *See* Chang Decl. ¶ 24 (describing the various areas of confidential information disclosed to SVH); Reply [#89-1] (Reply Chang Decl.)

---

[3] Indeed, the lack of substance underlying Plaintiffs' response (and its lawyers' declarations) was a major impetus for the Court holding a hearing along with the fact the Court considers motions to disqualify with the utmost seriousness. In setting a hearing, the Court hoped and expected to hear directly from the lawyers of SVH—the subjects of the motion—why there is no conflict of interest. Yet the only lawyer from SVH to attend the hearing was Micah McBride who never even did any work on the Lenzi Case. Notably absent was Michael Van, the attorney who served as lead counsel for PilePro (and Chang) in the Lenzi Case and who serves as lead counsel for Plaintiffs in this case. Van is the attorney who can best vouch as to how "substantially related" these two cases are and the confidential information shared by Chang with SVH attorneys. While the Court's order setting the hearing only ordered "counsel" to attend and did not specifically mention Van, the Court merely expected a lawyer would deem it necessary to personally defend himself against a motion to disqualify him as counsel. Apparently, according to McBride, Van had depositions to attend.

¶ 38. Beyond learning how and why Chang took certain actions as CFO, SVH also learned how Chang defended and analyzed fraud claims and how he prepared as a defendant against fraud litigation. Chang Decl. ¶ 24(c). Additionally, SVH got to know Chang personally. *Id.* ¶ 24(d). This sort of multi-level access would undoubtedly prove valuable to a lawyer deposing or cross-examining Chang. In the Court's view, Chang has met his burden for disqualification "by pointing to specific instances where [he] revealed relevant confidential information regarding [his] practices and procedures,'" and SVH's continued representation of Plaintiffs in this case would "in reasonable probability" involve the use of that information against Chang. *Am. Airlines*, 972 F.2d at 615 (quoting *Duncan*, 646 F.2d at 1032).

Plaintiffs argue parties under joint representation possess no right to claim confidentiality, and since SVH represented PilePro, Wendt, and Chang jointly, Chang cannot now claim the disclosed information as confidential. *See* Resp. [#86] at 7–8 (citing *Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 173 (5th Cir. 1979); *Garner v. Wolfinbarger*, 430 F.2d 1093, 1103 (5th Cir. 1970)). In a related vein, Plaintiffs argue all of the information provided by Chang was information owned and controlled by PilePro, and any information Chang shared was available to PilePro through other independent means. Van Decl. ¶¶ 10–11. The Court rejects SVH's arguments for a number of reasons. First, the cases relied upon by SVH do not support its position. The *Garner* case involved invocation of the attorney–client privilege, making it ill-suited to the circumstances of this case involving conflict of interest. As the court explained in Plaintiffs' other cited case, *Brennan's*:

> The fundamental flaw in defendants' position is a confusion of the attorney–client evidentiary privilege with the ethical duty to preserve a client's confidences. Assuming the prior representation was joint, defendants are quite correct that neither

> of the parties to this suit can assert the attorney–client privilege against the other as to matters comprehended by that joint representation. *Garner v. Wolfinbarger*, 430 F.2d 1093, 1103 (5th Cir. 1970), *cert. denied*, 401 U.S. 974, 91 S. Ct. 1191, 28 L.Ed.2d 323 (1971). But the ethical duty is broader than the evidentiary privilege: "This ethical precept, unlike the evidentiary privilege, exists without regard to the nature or source of information or the fact that others share the knowledge." ABA Code of Professional Responsibility, EC 4-4 (1970). "A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client . . . ." *Id.* EC 4-5.

*Brennan's*, 590 F.2d at 172.

In the *Brennan's* case, the court actually disqualified the attorney not withstanding his prior joint representation of plaintiff and defendants and rejected the attorney's argument "[t]his fact of joint representation is crucial . . . since no confidences can arise as between joint clients." *Id.* at 171. Therefore, the *Brennan's* case actually supports Chang's position and rejects SVH's argument.

Second, the Court notes the lawyers at SVH never presented Chang with a conflict waiver before, during, or after the Lenzi Case. Chang Decl. ¶ 15. Nor did SVH ever explain to Chang the potential consequences of joint representation. *Id.* Third, the Court observes the lawyers at SVH continued to represent jointly Chang, Wendt, and PilePro after April 20, 2011, when PilePro Sales fired Chang, until July 11, 2011, when SVH withdrew as counsel. The Court is not moved by SVH's argument Chang lost his right to assert confidentiality when SVH never presented him a conflict waiver, never explained to him the potential consequences of joint representation, and continued to represent PilePro, Wendt, and Chang despite the presence of an obvious conflict of interest.

SVH defends itself by arguing Boies Schiller joined the Lenzi Case on April 21, 2011—the day after Chang's termination. *See* Supp. Van Decl. [#95] ¶ 4. According to SVH, Boies Schiller, from the time it made an appearance, "managed" the Lenzi Case for PilePro, and SVH "followed

instructions given to SVH by Boies Schiller."[4] *Id.* ¶ 5. From April 21, 2011, through settlement, SVH claims to have had "little involvement" in the Lenzi Case. *Id.* While not entirely clear, SVH appears to be attempting to shirk the responsibility it assumed when it entered an attorney–client relationship with Chang. Surprisingly, SVH tries to cast itself as a puppet law firm being managed by and following the instructions of another law firm. The Court could point to the record in the Lenzi Case where on June 9, 2011, PilePro's First Amended Complaint and Counterclaims was filed on behalf of PilePro, Wendt, and Chang, and was signed by their attorney of record, Michael Van of SVH. *See* Chang Decl., Ex. D. But SVH would surely dismiss this evidence as SVH merely following Boies Schiller's orders. Notwithstanding this remarkable excuse, the Court rejects SVH's contention its joint representation of PilePro, Wendt, and Chang destroys the confidentiality of the information Chang provided SVH as his counsel.

In the alternative, Chang has shown he actually disclosed confidential information to SVH during the Lenzi Case, and SVH's continued representation of Plaintiffs in the current lawsuit will in reasonable probability result in SVH's use of this information against Chang. Therefore, SVH must be disqualified on this additional ground.

---

[4] In his supplemental declaration, Van suggests Chang has waived his right to object to SVH serving as counsel in this case because Chang did not object to Boies Schiller serving as counsel for Plaintiffs from September 2012 through November 2014 despite the fact Boies Schiller represented Chang in the Lenzi Case. *See* Supp. Van Decl. [#95], ¶ 7–8. As an initial matter, Van presents no evidence Boies Schiller ever represented Chang in the Lenzi Case. Furthermore, Chang, in his response declaration, swears he was not aware Boies Schiller had entered the case, he never had a single conversation with one attorney from Boies Schiller, and he never disclosed any confidential information to Boies Schiller. *See* Chang's Objection Resp. [#96-1] Ex. 1 (Supp. Chang Decl.) ¶¶ 50–51. On the other hand, Chang reiterates his only contacts, both before and after his firing on April 20, 2011, were with SVH. *Id.* Chang's statements are corroborated by the filing on June 9, 2011, of PilePro's First Amended Complaint and Counterclaims on behalf of PilePro, Wendt, and Chang. *See* Chang Decl., Ex. D. The document lists two SVH attorneys, Chatree Thongkham and Michael Van, as counsel, and Michael Van is the signing attorney. *Id.*

## Conclusion

In sum, SVH formerly represented Chang (jointly with Wendt and PilePro) in the Lenzi Case and acquired Chang's confidential information in doing so. Now, SVH is representing Wendt and PilePro as they sue Chang in a substantially related matter. There is a clear conflict of interest, and SVH must be disqualified.

The Court also notes, while the Fifth Circuit has indicated there is no requirement a moving party show prejudice in the disqualification context, the circumstances of this case reflect minimal prejudice to be incurred by Plaintiffs in losing SVH as counsel. SVH only recently substituted into the lawsuit—originally filed in September 2012—and Chang objected from the beginning to this substitution on the basis of a conflict of interest. After attempting to resolve the issue without the Court's intervention, Chang timely filed the motion to disqualify. *See* Mot. Disqualify [#83-1] Ex. 1 (Callari Decl.).

Finally, at the hearing held January 7, Micah McBride from SVH requested, in the event the Court were to grant Chang's motion to disqualify, that the disqualification be limited to SVH's representation of Plaintiffs against Chang and that SVH be allowed to continue in this case as counsel for Plaintiffs against the other Defendants. The request is curious, to say the least, considering Plaintiffs have alleged Chang as the "mastermind" of the elaborate scheme to defraud Plaintiffs, and the 114-page Complaint details the ways in which Chang conspired with his co-Defendants to execute their plan. Disqualifying SVH from representing Plaintiffs against Chang yet allowing SVH to continue representing them against Chang's co-Defendants creates a flagrant conflict of interest. The Court rejects the request.

Accordingly,

IT IS ORDERED that Defendant Humphrey Chang's Motion to Disqualify Counsel [#83] is GRANTED;

IT IS FURTHER ORDERED that Michael C. Van, Micah F. McBride, and the entire law firm of Shumway Van & Hansen are DISQUALIFIED from representing Plaintiffs (and Counter-Defendants and Third-Party Defendants) in this case;

IT IS FINALLY ORDERED that Plaintiffs, Counter-Defendants, and Third-Party Defendants shall have THIRTY (30) days to retain new counsel in this matter.

SIGNED this the 22nd day of January 2015.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE