FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

2016 JAN 21  PM 2: 33

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY

PILEPRO, LLC,  PILEPRO SALES
CORP.,  BLUE EMERALD, INC.,
PILEPRO STEEL, LP, ROBERTO R.
WENDT,
          **Plaintiffs,**

-vs-

HUMPHREY CHANG, RICHARD
HEINDL, MATTHIAS WEIGEL,
STEELWALL, GMBH,
          **Defendants.**

CAUSE NO.:
A-12-CA-00829-SS

## <u>O R D E R</u>

BE IT REMEMBERED on the 20th, 21st, 22nd, and 26th days of October 2015, the

Court held a bench trial in the above-style cause, and the parties appeared in person and through

counsel. During trial, the Court heard testimony from the following witnesses: Roberto Wendt,

Matthias Weigel, Richard Heindl, Wells Wakefield, Humphrey Chang, Markus Von Fuchs, Urs

Saal, Michael John Feifarek, Saul Solomon, Dwight Williams (via deposition), Roxi Phipps,

Kenneth Huff, Ian Morgan, Martin Doudoroff, Matthew John Feifarek, and Robert Youngman

(via deposition). Having considered the evidence and testimony presented at trial, the arguments

of counsel, the parties' briefs, and the governing law, the Court enters the following findings of

fact and conclusions of law.

**Findings of Fact**

## I.    Background

This is a tale of two men, Roberto Wendt and Richard Heindl, who started a business together: Wendt with a talent for promoting and selling and Heindl with access to valuable patents necessary for operating a successful steel sheet pile connector business. They established PilePro LLC, a limited liability company in name only. The two men disregarded corporate formalities in favor of operating PilePro LLC as a partnership, with each accessing the company's assets for their own use and benefit. As their business grew and became profitable, the two got along well. However, both became greedy and through the use of Chang, tried to secure the business for themselves by ousting the other. The result was litigation in the United States and in Europe which has continued for years and is still proceeding in both forums.

In this acerbic battle between once-close business partners, Wendt and Heindl have involved countless others and have wasted immeasurable time and the profits of what appears to have been a successful business endeavor, all because of each other's greed, distrust, and dislike of the other. The net result is neither could prove credible or specific damages resulting from the allegedly fraudulent transfer of patents from one company owned by Wendt and Heindl to another company owned by Wendt and Heindl. The tortured history of Wendt and Heindl's relationship should serve as a cautionary tale for those seeking economic success without concern for the greed which follows in its wake.

## A.    PilePro Entities

Defendants' counterclaims are largely founded on the disputed ownership of PilePro LLC.[1] The PilePro saga begins with a man named Georg Wall, who, in the 1990s, invented a

---

[1] There are at least four "PilePro" entities involved in this suit: PilePro LLC, PilePro Inc., PilePro Sales Corp., and PilePro Steel, LP. In their pleadings and throughout trial, the parties referred to each entity simply as

series of interlocking devices to connect steel sheet pile without welding (Modular Connectors). To protect his inventions, Wall obtained patents in Germany, the United States, and other countries. Wall produced, marketed, and sold these Modular Connectors through his steel sheet pile business, I.S. Handels, GmbH ("ISH"), a German corporation operating in Munich, Germany. Wall was the sole stockholder in ISH.

Richard Heindl, a defendant and counter-plaintiff in the present lawsuit, is Wall's nephew. Although Heindl is not an engineer, "Uncle Georg" hired him as a "Director of Research, Development, and Technical Standards" at ISH. Heindl helped ISH obtain financing for its continued production of Modular Connectors and establish a distribution network with companies outside of Germany.

In 2002, while seeking to expand ISH's distribution network in the United States, Heindl met Plaintiff Roberto Wendt. Thereafter, Wendt was hired to serve as ISH's United States distribution representative. According to Wendt, PilePro LLC was formed for the purpose of marketing and selling ISH's Modular Connectors in the United States. At some point after PilePro LLC's formation, Heindl told Wendt that Wall—whose health was failing—wanted to sell ISH's business assets, including the registered patents, pending patent applications, trademarks, production rights, and other tangible and intangible assets relating to the steel sheet pile connector business he operated through ISH. In order to purchase these assets, Wendt obtained an investment from Robert Youngman individually and as trustee of two trusts in the amount of $1,500,000. He also obtained $500,000 from Mike Feifarek. In exchange, Youngman and Feifarek received 4% ownership interest in PilePro LLC per $500,000 of their capital investments.

---

"PilePro," leaving the Court to differentiate among the entities and decipher whether the evidence supports a cause of action alleged by one of the four fluid "PilePro" identities.

On October 27, 2003, PilePro LLC purchased the intellectual property rights for the Modular Connectors from Wall.[2] Soon after, an amendment to the PilePro LLC Operating Agreement was signed, which came into effect on October 31, 2003 (2003 Amendment). The 2003 Amendment was signed by Wendt, who represented a 69% ownership interest in PilePro LLC as the President of PilePro Inc., and Mike Feifarek, who represented a 4% ownership interest in PilePro LLC. Collectively, PilePro Inc. and Feifarek comprised 73% of the ownership interests in PilePro LLC. The 2003 Amendment states:

> At all times there shall be only one (1) Managing Member. The Managing Member shall use all reasonable efforts to notify all Member(s) of its actions on behalf of the Company as often as reasonably practicable. PilePro Inc. is hereby appointed as the Managing Member of the Company. For as long as this Agreement is in effect, PilePro Inc. shall be a Delaware corporation that shall have *up to two (2) stockholders*: Richard Heindl (or a company or individual of his choosing) and Roberto Redondo Wendt. Each of the stockholders shall enter into an irrevocable voting agreement to elect the other as a director of PilePro Inc. and to cause Richard Heindl to be appointed Chief Executive Officer and Roberto Redondo Wendt to be appointed President of the Company.

Defs.' Trial Ex. 501 (emphasis added).

---

[2] Around the same time, on October 30, 2003, PilePro LLC formed Wall-Profile GmbH (Wall-Profile) to serve as PilePro LLC's European operations center. Wendt admits in his complaint that Heindl "had significant responsibilities" at Wall-Profile. Compl. [#1] ¶ 75. Wall-Profile was later transferred from PilePro LLC to PilePro Sales Corp. Pls.' Trial Ex. 8-b.

PilePro Sales Corp., which was incorporated in Nevada in 2007, was to serve as the United States operating arm for the PilePro entities. PilePro LLC in turn was to serve as a holding company for the intellectual property rights of the various PilePro entities. The parties do not dispute the ownership of PilePro Sales Corp., which has not changed since its formation in 2007:

| | |
|---|---|
| Richard Heindl | 34.5% |
| Roberto Wendt | 34.5% |
| Youngman | 7.75% |
| Youngman Trust 1 | 7.75% |
| Youngman Trust 2 | 7.75% |
| Mike Feifarek | 7.75% |

However, in their counterclaims, Heindl and Steelcom allege conversion against Wendt for allegedly transferring PilePro Sales Corp.'s assets to PilePro Steel, LP, which Wendt formed sometime in 2010.

Per § 501 of the 2003 Amendment, Heindl and Wendt were equal shareholders in PilePro

Inc. and both Heindl and Wendt served as directors of the corporation. Accordingly, Schedule B

of the 2003 Amendment lists the ownership interests in PilePro LLC[3] as follows:

| | |
|---|---|
| PilePro Inc. | 69% |
| Robert Youngman | 12% |
| Ian Morgan | 8% |
| Dalcemy Inc. | 5% |
| Mike Feifarek | 4% |
| Lee Wolosky | 2% |

*Id.* at 22.

Sometime in 2004,[4] another amendment to the PilePro LLC's Operating Agreement was

signed by Wendt on behalf of PilePro Inc., Youngman, and Mike Feifarek (2004 Amendment).

Defs.' Trial Ex. 502. Collectively, the signees comprised 85% of the ownership interests in

PilePro LLC, which represented the required vote of 80% ownership interest necessary to amend

the Operating Agreement. *Id.* at 2. Section 501 of the 2004 Amendment articulated Heindl and

Wendt's ownership interest in PilePro Inc. slightly differently:

> For so long as this Agreement is in effect, PilePro Inc. shall be a Delaware
> corporation that shall be *majority controlled* by: Richard Heindl (or a company or
> individual of his choosing) and Roberto Redondo Wendt.

Defs.' Trial Ex. 501 (emphasis added). Because there is no evidence that anyone other than

Heindl and Wendt has ever been a stockholder in PilePro Inc., the majority ownership interest in

---

[3] The parties also dispute their respective positions at PilePro LLC, in addition to their ownership interests. According to Heindl, Heindl served as the CEO of both PilePro LLC and PilePro Inc., while Wendt served as the president of both PilePro LLC and PilePro Inc. Wendt, on the other hand, insists Heindl declined to acquire stock in PilePro Inc., and therefore never became a stockholder or officer in PilePro Inc. and never had the authority to manage PilePro LLC's business operations. Based on the documentary evidence adduced at trial, the Court is convinced Heindl served as the CEO of PilePro LLC and a director of PilePro Inc. until his ouster in April of 2010. *See, e.g.*, Defs.' Trial Ex. 500 at 39; *id.* Ex. 506; *id.* Ex. 517; *id.* Ex. 615.

The Court notes that as executives of PilePro LLC, Wendt and Heindl maintained bifurcated responsibilities. Heindl was involved in the invention and design of new steel sheet pile connectors, while Wendt was responsible for the company's North American operations and marketing strategies. *See, e.g.*, Defs.' Trial Ex. 500 at 39.

[4] The agreement is dated January 1, 2004, but Mike Feifarek's signature on page 18 of the 2004 Amendment is dated "12-29-04." Defs.' Trial Ex. 502 at 18.

PilePro Inc. remained, in effect, unchanged. Schedule B of the 2004 Amendment did reflect important changes to the remaining 31% membership interest in PilePro LLC:

| | |
|---|---|
| PilePro Inc. | 69% |
| Robert Youngman | 4% |
| Youngman Trust 1 | 4% |
| Youngman Trust 2 | 4% |
| Ian Morgan | 8% |
| Dalcemy Inc. | 5% |
| Mike Feifarek | 4% |
| Slydee Corp. | 2% |

Defs.' Trial Ex. 502. The Court finds the 2004 Amendment is the presently controlling Operating Agreement of PilePro LLC. Moreover, Schedule B of the 2004 Amendment reflects a current and accurate representation of the remaining 31% membership interest in PilePro LLC.

Sometime in 2006, PilePro Inc.'s 69% membership interest in PilePro LLC was transferred to Wendt. The parties purportedly agreed to this transfer for the sole purpose of permitting Heindl to form Steelcom Limited (Steelcom), a British limited liability company, after which Wendt was to transfer a 34.5% membership interest in PilePro LLC to Steelcom. Although there is no evidence of a written agreement by which Wendt was to transfer half of his membership interest in PilePro LLC to Steelcom, Heindl has produced evidence that Steelcom paid Wendt $4,579 in cash in February 2007 "for [] 34.5% ownership shares in PilePro LLC." Defs.' Trial Ex. 601. Moreover, an email from PilePro LLC's Chief Financial Officer (CFO), Humphrey Chang, to Wendt establishes that Steelcom held a 34.5% membership interest in PilePro LLC. Defs.' Trial Ex. 516. Indeed, Wendt elicited this information from Chang and forwarded it to Heindl in response to Heindl's inquiry as to his ownership interest in PilePro Sales Corp. *Id.* After Chang's email, $280,000 was transferred from PilePro LLC to Steelcom. Defs.' Trial Ex. 560. In addition, a Managing Member's resolution, dated July 1, 2008 and electronically signed by Wendt, explained that Wendt was transferring half of his ownership

shares in PilePro LLC, representing 34.5% of PilePro LLC, to Steelcom, and that Steelcom's capital account balance reflected the amount of cash listed on the receipt. Defs.' Trial Ex. 602. Furthermore, Wendt signed a Bill of Sale before a South Dakota notary expressly confirming his sale to Steelcom of a 34.5% membership interest in PilePro LLC. Defs.' Trial Ex. 603. Wendt does not dispute that he signed the Bill of Sale before the notary.

In light of the overwhelming evidence indicating Wendt transferred half of his ownership interest in PilePro LLC to Steelcom, the Court finds Steelcom presently owns a 34.5% membership interest in PilePro LLC.[5] Accordingly, the present membership interest in PilePro LLC is:

| | |
|---|---|
| Roberto Wendt | 34.5% |
| Steelcom Limited | 34.5% |
| Robert Youngman | 4% |
| Youngman Trust 1 | 4% |
| Youngman Trust 2 | 4% |
| Ian Morgan | 8% |
| Dalcemy Inc. | 5% |
| Mike Feifarek | 4% |
| Slydee Corp. | 2% |

In April of 2010, Heindl was terminated as the Vice President of PilePro Sales Corp. and Wall-Profile. Soon after, he was ousted as a managing member of PilePro LLC. At trial there was a wealth of evidence establishing that two amendments to PilePro LLC's Operating Agreement—allegedly signed in 2005 and 2007 (2005 Amendment and 2007 Amendment)— were actually signed sometime between September 2010 and March 2011 by Youngman, Mike Feifarek, Morgan, Doudoroff, Matt Feifarek, and Lee Wolosky. These amendments purported to alter the ownership of PilePro LLC, such that Wendt alone owned a 69% interest in PilePro LLC.

---

[5] To clarify, Heindl no longer retains an ownership interest in PilePro Inc., since he relinquished his 34.5% interest in PilePro LLC (through his 50% interest in PilePro Inc.) to Wendt in 2006. In this lawsuit, Steelcom is the entity asserting an ownership interest in PilePro LLC.

The effect of these amendments was to oust Heindl as a member of PilePro LLC. The Court will address these backdated amendments below. *See infra* Conclusions of Law.

**B.    Contexo**

Plaintiffs' claims are largely founded on the disputed ownership of Contexo, a company they claim was formed in Europe to hold an unspecified number of PilePro LLC's non-U.S. patents.[6] Contexo is not a party to this action. The story of Contexo's formation follows.

Around May 2006, PilePro LLC hired Chang to provide tax and financial planning consulting services, as well as to advise PilePro LLC on complicated legal matters.[7] Chang was promoted to serve as PilePro LLC's fulltime CFO, a position he held until his termination on April 20, 2011. In late 2006 or early 2007, Chang recommended a reorganization of PilePro LLC. According to Wendt, Chang advised Wendt that PilePro LLC should transfer its non-U.S. patents to regional holding companies. This transfer would serve two purposes: (1) it would protect PilePro LLC from potential patent litigation liability, and (2) it would encourage regional companies to do business with what in reality was a foreign company. Pursuant to this reorganization, PilePro Sales Corp. was formed. On March 15, 2007, PilePro LLC agreed to license its patents to PilePro Sales Corp., after which PilePro Sales Corp. began to produce, market, and sell Modular Connectors domestically and abroad. PilePro Sales Corp. has a different organization structure than PilePro LLC. *See supra* note 1.

---

[6] The patents at issue in this case are the non-U.S. patents owned by PilePro LLC prior to March 2008 (including the patents originally owned by Georg Wall), which Wendt alleges were fraudulently transferred to Contexo via a backdated assignment agreement, and the non-U.S. patents registered in Contexo's name after 2008. Heindl—the inventor—acknowledges that from March 2008 until his ouster from PilePro LLC in 2010, he registered all new non-U.S. patents in Contexo's name and all new U.S. patents in PilePro LLC's name. By asserting an ownership interest in Contexo, Plaintiffs are also asserting an ownership interest in the patents registered in Contexo's name after 2008.

[7] The Court declines to comment on the wisdom of hiring a non-lawyer to counsel a series of related companies on the complicated domestic and international laws applicable to them.

Pursuant to Chang's reorganization plan, on December 5, 2007, Chang and Dwight Williams, the United States attorney representing the PilePro entities, traveled to Switzerland to meet with Enrico Farroni and Roland Harzenmozer, individuals retained by PilePro LLC to provide legal and trustee services in connection with Contexo. Soon after, on December 10, 2007, Contexo was formed. Wall-Profile, a wholly owned subsidiary of PilePro Sales Corp. at the time,[8] provided the startup capital for Contexo's formation. Soon after, PilePro LLC transferred $145,000 to Wall-Profile to reimburse Wall-Profile for its initial €100,000 investment in Contexo.

As a result of this capital investment, Chang reassured Wendt that all the necessary legal documentation existed establishing PilePro LLC's control over Contexo. Chang also explained to Wendt that Farroni and Harzenmozer were to serve as Contexo trustees, directors, and shareholders of 100 shares of stock each, but that they knew Contexo was formed to operate for PilePro LLC's benefit. As Wendt's story goes, however, Defendants destroyed the documentation proving PilePro LLC's beneficial ownership of Contexo in order to further their conspiracy to defraud Plaintiffs. Even without this documentation, the Court finds that Contexo is wholly or partially owned by PilePro LLC, Enrico Farroni, and Roland Harzenmozer.

After Contexo's formation, Williams drafted a contract purporting to sell PilePro LLC's non-U.S. patents to Contexo, which was circulated to the parties for several months. Wendt, however, claims an agreement was never reached as to the terms of the assignment contract. According to Wendt, Defendant Matthias Weigel, PilePro LLC's former patent attorney,[9] nevertheless initiated the fraudulent transfer of PilePro LLC's non-U.S. patents to Contexo by

---

[8] *See supra* note 1 (explaining transfer of Wall-Profile from PilePro LLC to PilePro Sales Corp.).

[9] *See infra* section II.A.ii (discussing Weigel's role as PilePro LLC's patent attorney).

requesting the German Patent Office to register the patents in Contexo's name. Wendt insists there is no writing confirming PilePro LLC's transfer of the non-U.S. patents to Contexo.

However, during a meeting held for Contexo on March 25, 2010, an agreement confirming the 2008 transfer of PilePro LLC's non-U.S. patents to Contexo was signed by Heindl and Farroni (Assignment Agreement). Defs.' Trial Ex. 530. It is undisputed that Wendt attended this meeting, and was therefore present when Heindl and Farroni signed this agreement. Moreover, although Wendt did not sign the Assignment Agreement, he signed the minutes from the meetings. Defs.' Trial Ex. 648. By tolerating the signing of the Assignment Agreement and thereafter signing the minutes, the Court finds Wendt impliedly consented to transfer PilePro LLC's non-U.S. patents to Contexo.[10]

Moreover, it is undisputed that during 2008, Contexo paid PilePro LLC $1.88 million, an amount Heindl maintains represents the purchase price of PilePro LLC's non-U.S. patents. It is also undisputed that Wall-Profile paid Contexo licensing fee for approximately two years after the patents were allegedly transferred in 2008. The Court is unconvinced by Plaintiffs' argument that the transfer of $1.88 million from Wall-Profile to Contexo to PilePro LLC was an elaborate scheme to avoid taxes rather than the straightforward execution of a written agreement signed by Heindl and witnessed by Wendt. The Court therefore finds $1.88 million was the agreed upon price for Contexo's purchase of PilePro LLC's non-U.S. patents, and Contexo is the current lawful owner of the disputed non-U.S. patents.

---

[10] On May 28, 2015, the Swiss court correctly determined the non-U.S. patents at issue were transferred with the knowledge and desire of PilePro LLC after Wendt—who was present at the signing of the Assignment Agreement—tolerated the signing of the agreement and thereafter "added his signature to the last page of the minutes of [Contexo's] regular annual general meeting." Mot. Collateral Estoppel [#137-1] Ex. B (2015 Swiss Ruling) at 49.

## II.     Procedural History

### A.     Swiss Lawsuit

In July of 2010, PilePro LLC initiated a lawsuit in Switzerland seeking to invalidate the transfer of PilePro LLC's non-U.S. patents to Contexo. PilePro LLC submitted the backdated 2005 Amendment in support of its claim that the transfer of the non-U.S. patents to Contexo was fraudulent. As noted above, this backdated agreement was not signed until at least September 2010, several months after it was submitted to the Swiss court in July of 2010.

In September of 2010, the Swiss court issued a preliminary injunction against Contexo, freezing the non-U.S. patents PilePro LLC transferred to Contexo. That ruling specifically referred to the 2005 Amendment as evidence that Heindl did not have the authority to sign the March 25, 2010 Assignment Agreement on behalf of PilePro LLC. Defs.' Trial Ex. 556 at 24. Because § 5.1 of the 2005 Amendment lists Wendt as the sole "Managing Member" of PilePro LLC, the Swiss Court concluded, "Richard Heindl was not authorized to solely represent [PilePro LLC]" in signing the March 25, 2010 Assignment Agreement. Id.

Nearly five years later, on May 28, 2015, a Swiss court reconsidering the injunction ruled in favor of Contexo and dismissed PilePro LLC's claims. 2015 Swiss Ruling at 32. The Swiss court concluded Contexo was the lawful owner of the non-U.S. patents purchased from PilePro LLC, PilePro LLC knowingly sold the non-U.S. patents to Contexo for $1.88 million, the March 25, 2010 Assignment Agreement was not backdated, and PilePro LLC impliedly or explicitly authorized the transfer of the non-U.S. patents to Contexo. PilePro LLC's appeal of this decision is currently pending in Switzerland.[11]

---

[11] Defendants have requested this Court collaterally estop Plaintiffs from relitigating issues already decided by the Swiss court on May 28, 2015. *See* Mot. Collateral Estoppel [#137]. Generally, a litigant does not have to exhaust his appeals before a judgment becomes final for purposes of collateral estoppel. *See TCA Bldg. Co. v. Nw. Res. Co.*, 861 F. Supp. 1366, 1374 (S.D. Tex. 1994). However, Texas and federal courts recognize an exception to

**B.     Current Lawsuit**

On September 7, 2012, Plaintiffs PilePro LLC, PilePro Sales Corp., PilePro Inc., PilePro Steel, LP, and Wendt brought a series of civil RICO and state law claims against Defendants Chang, Heindl, Weigel, and Steelwall GmbH. Plaintiffs specifically claimed that Heindl, Weigel, and Chang devised and engaged in a pattern of racketeering activity to defraud Plaintiffs by misappropriating patent rights, money, and business opportunities. The RICO claims were dismissed at trial, but Plaintiffs' common law claims of fraud, conspiracy, and breach of fiduciary duty remain.[12]

Plaintiffs seek an award of compensatory and punitive damages, and declarations that (1) Heindl is not and has never been a shareholder in PilePro Inc., (2) Heindl is not and has never been the CEO of PilePro LLC, (3) Heindl did not have authority to transfer or assign the non-U.S. patents owned by PilePro LLC to Contexo, (4) Wendt or PilePro LLC is a stockholder in Contexo, and (5) the "Backdated Assignment" is void. They also seek to divest Defendants of their respective interests in Contexo and Steelwall GmbH, to enjoin them from engaging in the domestic and international connector markets, and a disgorgement of all attorneys' fees paid to Weigel. Finally, Plaintiffs seek a constructive trust in all proceeds from any patent held by any Defendants.

---

the general rule "where appeal consists of a trial de novo." *Id.* In the Swiss judicial system, appellate courts conduct *de novo* review and are permitted to consider additional facts introduced on appeal that were not considered in the First Instance proceeding. *See* Swiss Code of Civil Proceedings, Arts. 310, 316, 317. In this case, the Court finds the Swiss ruling is not a final judgment and therefore DENIES Defendants' motion.

In the alternative, even if the Swiss judgment is entitled to preclusive effect, that judgment is consistent with the Court's findings to the extent it relates to the valid transfer of patents from PilePro LLC to Contexo.

[12] In addition to the RICO claims (Counts 1 and 2), Plaintiffs also dismissed the following claims against Defendants: intentional interference with contractual relations (Count 9), intentional interference with prospective economic advantage (Count 10), Heindl's breach of his employment agreement (Count 14), and Chang and Steelwall GmbH's intentional interference with contractual relations (Count 15). Plaintiffs' remaining claims are: (1) fraud, (2) civil conspiracy to defraud, (3) Chang's breach of fiduciary duty to PilePro LLC and PilePro Sales Corp., (4) Heindl's breach of fiduciary duty to PilePro Sales, (5) Weigel's breach of fiduciary duty to PilePro LLC, (6) unjust enrichment, and (7) constructive trust.

On March 4, 2013, Heindl and Steelcom counterclaimed against Wendt and the remaining members of PilePro LLC: Morgan, Youngman, Youngman Trust 1, Youngman Trust 2, Mike Feifarek, Matt Feifarek, Doudoroff, and Stacie Bryan[13] (Counter-Defendants). Heindl and Steelcom seek compensatory and punitive damages for Counter-Defendants' alleged breach of fiduciary duty, breach of contract, and conversion. Heindl and Steelcom also seek declarations that (1) Heindl has a 34.5% interest in PilePro Sales Corp., (2) Steelcom has a 34.5% interest in PilePro LLC, (3) Heindl and Steelcom are entitled to a proportional interest in any entity, namely PilePro Steel, LP, to which the assets of PilePro Sales Corp. or PilePro LLC were wrongly transferred, (4) Heindl and Steelcom are entitled to a constructive trust of all assets converted by Wendt for his benefit or for the benefit of PilePro Steel, LP, (5) Wendt should not be permitted to retain ownership interest in any converted asset currently held in his name, and (6) Heindl is the rightful owner of the CFC 90 patent, identified as USPTO Patent No. 8055481, which was fraudulently obtained by Wendt. Both parties seek an award of attorneys' fees and costs.

Unable to untangle this mess and unclear on the factual determinations, the Court ordered a bench trial, which occurred October 20–22 and 26th, 2015.

## Conclusions of Law

Having considered the testimony of the witnesses and the admitted exhibits, the Court now enters the following conclusions of law.

## I.      Jurisdiction

Before reaching the merits of this case, the Court must first ensure it has the authority to exercise jurisdiction over this case. In a surprising post-trial filing, Counter-Defendants—who are represented by the same counsel as Plaintiffs, i.e. the parties who originally filed this action

---

[13] The parties have since agreed to the dismissal of Stacie Bryan as a counter-defendant, and she has been dismissed. Order of Oct. 20, 2015 [#160].

in federal court—argued this Court has always lacked jurisdiction over Plaintiffs' claims. Reply [#178] at 3. From the time Plaintiffs filed their first complaint on September 7, 2012 until the first day of trial, the Court properly exercised federal question jurisdiction. In that complaint, Plaintiffs alleged two counts of civil conspiracy under RICO. The RICO claims were properly before this Court, and the state law claims, including breach of fiduciary duty, fraud, and civil conspiracy, were part of the same nucleus of operative facts permitting this Court to exercise supplemental jurisdiction in accordance with 28 U.S.C. § 1367. At trial, however, Plaintiffs dismissed their RICO claims, thereby abandoning a federal law question upon which supplemental jurisdiction could rest.

The question, therefore, is whether this Court possesses supplemental jurisdiction over Plaintiffs' state law claims after they voluntarily dismissed their federal law claims. *In Boelens v. Redman Homes, Inc.*, the Fifth Circuit distinguished the question at issue today from the rule prohibiting a plaintiff from ousting removal jurisdiction by voluntarily amending the complaint to drop all federal questions. Where the plaintiff, rather than the defendant, invokes the jurisdiction of federal court, the Fifth Circuit concluded "the plaintiff must be held to the jurisdictional consequences of a voluntary abandonment of claims that would otherwise provide federal jurisdiction." 759 F.2d 504, 508 (5th Cir. 1985). In this case, there is no amended complaint superseding the original complaint. However, Plaintiffs orally dismissed their federal question claims at trial, to which defense counsel expressly agreed. Based on the reasoning set forth in *Boelens*, with no federal claim to which the remaining state claims could be supplemental, there can be no supplemental jurisdiction.

Therefore, the only possible basis for subject-matter jurisdiction in this case is diversity.[14] Where jurisdiction is premised on diversity of citizenship under § 1332(a), as it is here, each plaintiff must be diverse from each defendant. *See Newman-Green v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989). However, under § 1332(a)(1), a suit may not be commenced by or against a United States citizen who is domiciled in a foreign country, because although this individual is a citizen of the United States, he is not domiciled in a particular state. *See Smith v. Carter*, 545 F.2d 909, 911 (5th Cir. 1977). In this case, at the time of filing and to this day, Ian Morgan—a member of Plaintiff PilePro LLC and a counter-defendant—is an American citizen domiciled in Great Britain, and therefore may not sue or be sued in federal court. *See* Counter-Defs.' Mot. Dismiss [#172] at 3.

Ian Morgan's citizenship is relevant to PilePro LLC's ability to sue in federal court, because an unincorporated entity is not a "citizen" for purposes of diversity jurisdiction. Instead, its citizenship is determined by the citizenship of its members, and individual members must be diverse from all parties on the opposing side. *Harvey v. Grey Wolf Drilling Co.*, No. 07-31106, 2008 WL 4194538, at *2 (5th Cir. Sept. 15, 2008) ("[T]he citizenship of an LLC is determined by the citizenship of all of its members."). From these established principles of law, the Fifth Circuit concluded, "a partnership whose members include U.S. citizens domiciled abroad[] is stateless for the purposes of diversity jurisdiction." *Firefighters' Retirement Sys. v. Citco Grp. Ltd.*, 796 F.3d 520, 523 n.1 (5th Cir. 2015). Because a member of PilePro LLC is "stateless" for

---

[14] After Plaintiffs dropped their RICO claims several hours into the first day of trial, the Court directly questioned the parties as to the basis of its subject-matter jurisdiction. Specifically, the Court questioned whether diversity jurisdiction would be destroyed by any post-filing determination that Steelcom (a British limited liability company owned by Heindl, a resident of Germany) is a member of PilePro LLC. After conducting its own research, the Court was satisfied that in light of *Symes v. Harris*, diversity jurisdiction would not be destroyed by this post-filing determination. *See* 472 F.3d 754, 759 (10th Cir. 2006). Despite the Court's express concern it may lack jurisdiction, counsel for Plaintiffs and Counter-Defendants—who now seek to destroy federal jurisdiction for their clients—failed to alert the Court that Ian Morgan, a member of PilePro LLC, is an American citizen residing abroad, and therefore incapable of suing or being sued in federal court. Such neglect on counsel's part is an enormous waste of judicial resources and this Court's time.

diversity purposes, PilePro LLC is not diverse from all parties on the opposing side. Without complete diversity, the Court lacks subject-matter jurisdiction.

Federal Rule of Civil Procedure 21 permits a district court to "drop a nondiverse party whose presence is not essential to the suit to preserve and perfect diversity jurisdiction." *Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 774 (5th Cir.1986); *see also Newman-Green, Inc.*, 490 U.S. at 834 ("[I]t is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time."). However, even a cursory inspection of this lawsuit reveals PilePro LLC is not only a necessary party but also an indispensable one. Although all parties would be prejudiced by dismissal of the case after three years of litigation, the prejudice that would result to Defendants from dismissing PilePro LLC alone is overwhelming. Indeed, the Court declines to give PilePro LLC the prodigious advantage of bringing a lawsuit in federal court only to be dissatisfied with its performance at trial, subsequently obtain dismissal of its original claims, and thereafter assert them in state court with full knowledge of Defendants' evidence and how persuasive its evidence was in the Court's eyes. Accordingly, because PilePro LLC is indispensable, the Court is unable to drop the nondiverse party in order to preserve diversity jurisdiction over Plaintiffs' claims.

Although the Court lacks jurisdiction over Plaintiffs' claims, it may retain jurisdiction over Heindl and Steelcom's counterclaims if an independent jurisdictional ground exists for their counterclaims. *See Kuehne & Nagel v. Geosource, Inc.*, 874 F.2d 283, 291 (5th Cir. 1989). By dropping Morgan as a counter-defendant under Rule 21, who the parties agree is dispensable,[15] this Court can retain original jurisdiction over the counterclaims, since complete diversity exists

---

[15] In their reply to their motion to dismiss, Counter-Defendants' position as to whether Ian Morgan is an indispensable party is unintelligible. Reply [#178] at 12 ("Ian Morgan is clearly just as dispensable or indispensable as the other Counter/Third-Party Defendants."). Even construing Counter-Defendants' reply as an argument against the dismissal of Morgan as a dispensable party, the Court finds this argument unconvincing at best.

among the parties. *See Universal Reinsurance Co. Ltd. v. St. Paul Fire and Marine Ins.*, No. 95-Civ-8436, 2001 WL 585638, at *6 (S.D.N.Y. May 30, 2001) (severing one of the defendant's counterclaims against a non-diverse counter-defendant under Rule 21 in order to retain jurisdiction).

Moreover, the Fifth Circuit has held, "if a district court retains jurisdiction over the counterclaim, it may permit the dismissed claims to be asserted as counterclaims to the retained claim." *McLaughlin v. Mississippi Power Co.*, 372 F.3d 344, 355 (5th Cir. 2004). Although Plaintiffs were not given the opportunity to reassert their claims as counterclaims, given the enormous amount of time and judicial resources this case has depleted in the last three years, the Court formally dismisses Plaintiffs' claims and on its own motion reinstates them as compulsory counterclaims. *See, e.g., Crest Auto Supplies, Inc. v. Ero Mfg. Co.*, 246 F. Supp. 224, 229 (N.D. Ill. 1965) (dismissing the complaint for lack of jurisdiction and on its own motion reinstating the claims as compulsory counterclaims to the original defendant's counterclaim). Because this Court finds Plaintiffs' claims arise out of the same transaction or occurrence as Defendants' counterclaims, Plaintiffs' claims fall within the Court's supplemental jurisdiction and do not require an independent jurisdictional basis.[16] *See Kuehne & Nagel*, 874 F.2d at 292 (holding compulsory counterclaims do not require an independent jurisdictional basis). Otherwise, were this Court to dismiss Plaintiffs' claims while retaining jurisdiction over Defendants' counterclaims, Defendants could argue any state action instituted by Plaintiffs is barred by res judicata, since Plaintiffs were compelled to assert such claims in federal court and failed to do so. Accordingly, all claims in this action are properly before the Court.

---

[16] For the sake of clarity, the Court will refer to the parties by their original filing status, e.g. Plaintiffs will remain Plaintiffs and Counter-Plaintiffs Heindl and Steelcom will remain Counter-Plaintiffs.

## II.        Plaintiffs' Claims

Plaintiffs seek an award of compensatory and punitive damages for breach of fiduciary duty against Chang and Weigel,[17] fraud against Chang and Heindl, and conspiracy to defraud against all Defendants. Wendt also claims Heindl defrauded him by falsely representing to Wendt that he would repay two loans.

### A.        Breach of Fiduciary Duty

Plaintiffs claim Defendants Chang and Weigel breached their fiduciary owed to PilePro Sales Corp. and PilePro LLC. Before trial, both parties briefed Texas law, apparently in agreement as to which state's law applied. During and after trial, however, this implicit agreement fell apart, and the parties submitted a flurry of briefing arguing Nevada, Delaware, or Texas law applies to their various state law claims.

In considering the parties' arguments, the Court applies Texas choice-of-law rules. *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004) ("[A] federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state, here Texas."). Choice-of-law issues are determined on an issue-by-issue basis. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984). In Texas, "the law of the incorporating state governs a corporation's internal affairs." *Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 354 (5th Cir. 1989); *see also Askanase v. Fatjo*, 130 F.3d 657, 670 (5th Cir. 1997) ("Federal courts sitting in Texas apply the law of the state of incorporation when a corporation's internal affairs are implicated.").

---

[17] At trial, Plaintiffs did not expressly abandon their original claim against Heindl for breach of fiduciary duty owed to PilePro Sales Corp. However, Plaintiffs failed to include this claim in their proposed findings of fact and conclusions of law, and they have not asked this Court to amend their pleadings to conform to proof at trial. Accordingly, the Court declines to consider a claim that Plaintiffs either carelessly failed to include in their proposed findings or purposefully abandoned.

Because PilePro Sales Corp. is incorporated under the laws of Nevada, Nevada law determines whether Chang owed PilePro Sales Corp. a fiduciary duty and whether he breached this duty. PilePro LLC, on the other hand, is a Delaware company with its principal place of business in Texas. Accordingly, Delaware law governs Plaintiffs' claim that Chang and Weigel breached a fiduciary duty owed to PilePro LLC. *See 122261 Fondren, LLC v. Riverbank Realty GP, LLC*, No. H-09-4074, 2010 WL 1741071, at *2 (S.D. Tex. April 29, 2010) (applying the "internal affairs doctrine" to conclude Delaware law applied, because the limited partnership and limited liability company at issue were Delaware companies).

### i.    Chang

#### a.  PilePro Sales Corp.

Plaintiffs first claim Chang owed PilePro Sales Corp. a fiduciary duty and breached that duty by (1) advising Wendt to set up PilePro Steel, LP and (2) engaging in a conspiracy defraud PilePro Sales Corp. As a result of Chang's breach of fiduciary duty, Plaintiffs claim PilePro LLC has been damaged in the amount of $8,050,628. To prevail on a breach of fiduciary duty under Nevada law, which determines whether Chang breached a fiduciary duty owed to PilePro Sales Corp., a plaintiff must establish (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) the breach was the proximate cause of the damages. *See Takiguchi v. MRI Intern, Inc.*, 47 F. Supp. 3d 1100, 1120 (D. Nev. 2014). While Chang concedes the first element—that he owed a fiduciary duty to PilePro Sales Corp. and PilePro LLC—he nevertheless insists Plaintiffs failed to prove a breach of fiduciary duty, or in the alternative, Plaintiffs failed to prove that they have suffered any damages as a proximate cause of Chang's alleged breach of a fiduciary duty.

The Court agrees that Plaintiffs failed to prove by a preponderance of the evidence that Chang was responsible for the formation of PilePro Steel, LP. Moreover, because the Court finds

Plaintiffs have also failed to prove Defendants conspired to defraud PilePro LLC and PilePro Sales Corp., *see infra* section II.C., the Court concludes Chang has not breached a fiduciary duty to PilePro Sales Corp.

### b.  PilePro LLC

Plaintiffs further claim Chang owed PilePro LLC a fiduciary duty and breached that duty by (1) forging an employment agreement between Heindl and PilePro LLC, (2) filing fraudulent affidavits in German court, (3) creating the backdated 2005 and 2007 Amendments to PilePro LLC's Operating Agreement and persuading Wendt and Counter-Defendants to sign it, (4) signing sworn affidavits claiming Heindl had no interest in PilePro LLC and then stating the opposite after Wendt fired Chang and Chang began working with Heindl, and (5) engaging in a conspiracy defraud PilePro LLC. As a result of Chang's breach of fiduciary duty, Plaintiffs claim PilePro LLC has been damaged in the amount of $8,050,628.

Under Delaware law, which determines whether Chang breached a fiduciary duty owed to PilePro LLC, a plaintiff must prove (1) a fiduciary duty existed and (2) the defendant breached that duty. *Beard Research, Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010). At trial, Chang admitted he falsified the employment agreement between Heindl and PilePro LLC, but he maintained Wendt instructed him to do this. Moreover, to the extent Plaintiffs are alleging breach of fiduciary duty on Heindl's behalf, Plaintiffs lack standing to assert this claim. Moreover, Plaintiffs failed to establish by a preponderance of the evidence that Chang hatched the plan to oust Heindl by creating the backdated 2005 and 2007 Amendments, nor have they established that Chang was responsible for persuading Wendt and the other PilePro LLC members to sign these amendments. Finally, Plaintiffs have not explained how Chang's alliance with Heindl after Chang's termination from PilePro LLC breached a fiduciary duty owed to PilePro LLC. Chang

no longer worked for PilePro LLC, was never a member of the company, and Plaintiffs do not expressly allege Chang misappropriated trade secrets or revealed confidential information.

Nevertheless, even if Plaintiffs had established a breach of fiduciary duty to either PilePro Sales Corp. or PilePro LLC, the Court has no basis on which to make a responsible estimate as to the damages. *See Beard Research*, 8 A.3d at 613 ("[T]his Court may not set damages based on mere 'speculation or conjecture' where a plaintiff fails to adequately prove damages."). To prove their damages in the amount of $8,050,628, Plaintiffs relied on expert testimony from Saul Solomon. However, Solomon only testified as to the blanket economic damages sustained by the various PilePro entities as a result of Defendants' unfair competition, which he estimated were in excess of $8 million. Solomon did not even attempt to distinguish the damages caused to PilePro Sales Corp. and PilePro LLC as a result of Chang's alleged breach of fiduciary duty. This wholesale estimation of Plaintiffs' damages provides the Court with nothing more than speculation and conjecture upon which to base a damages award.

### ii.   Weigel

Plaintiffs allege Weigel, as PilePro LLC's former patent attorney, owed PilePro LLC a fiduciary duty and breached that by (1) failing to disclose he was representing Heindl and Contexo in matters adverse to PilePro LLC, (2) failing to disclose that he had prepared the Assignment Agreement and subsequently filed it with various European patent offices, (3) affirmatively misrepresenting to Wendt and Williams that he would continue to loyally represent PilePro LLC following Heindl's termination, (4) using confidential information obtained while working for PilePro LLC to draft new patents for the benefit of Contexo, (5) submitting fraudulent affidavits and declarations to German courts, (6) appearing in legal and patent proceedings in Europe to advocate for Defendants in matters adverse to PilePro LLC, and (7)

engaging in a conspiracy to defraud PilePro LLC by fraudulently transferring its patents to Contexo. As a result of Weigel's breach of fiduciary duty, Plaintiffs claim PilePro LLC has been damaged in the amount of $8,050,628.

To determine whether Heindl breached his fiduciary duty to PilePro LLC, a plaintiff must prove (1) a fiduciary duty existed and (2) the defendant breached that duty. *See Beard Research*, 8 A.3d at 601. Weigel does not dispute he owed PilePro LLC a fiduciary duty. Instead, he argues that Plaintiffs have failed to prove a breach of this duty. Weigel began serving as PilePro LLC's patent attorney in 2004 and continued in that capacity until July 4, 2010. Weigel also served as a patent attorney for Contexo. At trial he testified that from March of 2008 to December of 2009, he was paid by Contexo to register Heindl's new non-U.S. patents with Contexo and by PilePro LLC to register Heindl's new U.S. patents with PilePro LLC. Later, Weigel assisted in the transfer of patents from PilePro LLC to Contexo pursuant to the Assignment Agreement. Despite Plaintiffs' knowledge and consent to Weigel's dual role as a patent attorney for both PilePro LLC and Contexo, Plaintiffs now argue Weigel breached a fiduciary duty to PilePro LLC by serving in this dual capacity.

The Court finds Weigel did not breach a fiduciary duty to PilePro LLC by failing to disclose his representation in Contexo in matters adverse to PilePro LLC. The Court is unable to decipher when the interests of PilePro LLC and Contexo became adverse, and Plaintiffs have unconvincingly argued PilePro LLC and Contexo's interest were adverse from the start. From the moment of Contexo's formation in 2007, the relationship between Contexo and PilePro LLC has been fluid and undefined. At trial, Weigel testified that as soon as he became aware of a possible conflict of interest between Contexo and PilePro LLC, he resigned as PilePro LLC's attorney. What followed could possibly constitute a breach of fiduciary duty but for the fact that

Plaintiffs failed to establish by a preponderance of the evidence that Weigel affirmatively misrepresented to Wendt that he would continue to loyally represent PilePro LLC following Heindl's termination, used confidential information obtained while working for PilePro LLC to draft new patents for Contexo, submitted fraudulent affidavits and declarations to German courts, appeared in European patent proceedings to advocate positions adverse to PilePro LLC, or engaged in a conspiracy to defraud PilePro LLC by fraudulently transferring its patents to Contexo. Moreover, because the Assignment Agreement was valid and enforceable, the Court concludes Weigel did not breach his fiduciary duty by initiating the transfer of the PilePro LLC's non-U.S. patents to Contexo in furtherance of the Assignment Agreement.

Finally, even assuming Plaintiffs had established breach of fiduciary duty, Plaintiffs' blanket assertion that it suffered $8,050,628 in aggregate damages as a result of Weigel's breach of fiduciary duty, Chang's breach of fiduciary duty, Defendants' fraud, and their conspiracy to defraud is unconvincing, and once again prevents the Court from making a responsible estimate as to the actual damages suffered by Plaintiffs due to Weigel's alleged breach of fiduciary duty.

## B.    Fraud

In Texas, courts only undertake a choice-of-law analysis if there is a conflict of law affecting the outcome of an issue. *See Duncan,* 665 S.W.2d at 419. The party asserting a conflict with Texas substantive law must demonstrate the existence of a true conflict. *Greenberg Traurig of N.Y., P.C. v. Moody,* 161 S.W.3d 56, 70 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Absent such a demonstration, Texas law applies. *Id.* Neither party disputes that Texas law governs Plaintiffs' fraud claims against Defendants. *See* Pls.' Proposed Findings of Fact and Conclusions of Law [#146] ¶ 102 (citing Texas cases); Defs.' Proposed Findings of Fact and Conclusions of Law [#152] at 6 (failing to dispute that Texas law applies to Plaintiffs' fraud

23

claims). Because neither party has demonstrated that Texas law conflicts with other potentially applicable laws, this Court need not undertake a choice-of-law analysis, and Texas law will govern Plaintiffs' fraud claims. *See, e.g.*, *Flagship Credit Corp. v. Indian Harbor Ins. Co.*, 481 F. App'x 907, 910 (5th Cir. 2012) (applying Texas law because the defendant failed to argue that Pennsylvania law differed from Texas law).

Plaintiffs claim Chang and Heindl engaged in fraud by representing to Wendt that Contexo was a company set up for the benefit of PilePro LLC and creating the allegedly fraudulent Assignment Agreement. In addition, Plaintiffs claim Weigel, along with Heindl and Chang, fraudulently transferred PilePro LLC's non-U.S. patents to Contexo without Wendt's permission. In Texas, common-law fraud occurs when: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant (a) knew the representation was false or (b) made the representation recklessly, as a positive assertion, and without knowledge of its truth; (5) the defendant made the representation with the intent plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *In re FirstMerit Bank*, 52 S.W.3d 749, 758 (Tex. 2001).

Plaintiffs have failed to establish their claims under Texas law. First, because the Court finds the Assignment Agreement was valid, Chang, Heindl, and Weigel cannot be liable for their involvement in creating and executing this agreement. Second, even assuming Chang and Heindl misrepresented PilePro LLC's status as the beneficial owner of Contexo—which the Court does not concede—Plaintiffs have failed to establish by a preponderance of the evidence the damages suffered as a result of Defendants' alleged fraud.

## C.      Conspiracy to Defraud

Plaintiffs allege Defendants conspired to defraud "PilePro"—presumably PilePro LLC—of its interest in Contexo and the non-U.S. patents transferred to Contexo. Under Texas law, which the parties do not dispute governs resolution of this issue, the elements of civil conspiracy in Texas are: "'(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds of the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result.'" *Wackman v. Rubsamen*, 602 F.3d 291, 408 (5th Cir. 2010) (quoting *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005)). A civil conspiracy requires specific intent. *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 729 (Tex. 1995).

Plaintiffs' conspiracy allegations fail to satisfy even a generous reading of the elements of conspiracy. Plaintiffs have not established that Heindl, Chang, and Weigel even entered into an agreement, much less that they were aware of the "wrongful conduct at the inception of the [purported] combination or agreement." *Id.* at 719. Indeed, the testimony at trial revealed Weigel and Chang did not meet until sometime in 2010, a fact which casts doubt on Plaintiffs' allegation that Weigel and Chang conspired to defraud PilePro LLC in 2008. Moreover, to constitute a conspiracy, two or more persons must combine "to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d 798, 808 (S.D. Tex. 2009). Because the Court finds the transfer of patents from PilePro LLC to Contexo was valid, Plaintiffs' claim must fail, because a conspiracy claim cannot be predicated on a lawful act accomplished in a lawful manner.

## D.      Fraudulent Loans

Wendt claims that on September 21, 2009, he paid the Tilton School in New Hampshire $101,043.01 in order for Heindl's children to attend this private boarding school (School Loan).

Around the same time, Heindl purportedly asked for a $7,000 loan on behalf of his brother (Brother Loan). Wendt claims Heindl falsely represented he would repay both the School and Brother Loans, and he made these representations with the intent to deceive Wendt. Wendt claims he relied on these representations and therefore is entitled to recover damages.

At trial, Heindl testified a PilePro entity, not Wendt, paid for his children to attend the Tilton School. However, Wendt produced a check written from Wendt's USBank account made out to Heindl in the amount of $100,043.01, which listed the purpose of the check as "Simone and Lucas Heindl." Pls.' Trial Ex. 190. This check and Wendt's bare testimony is the extent of the evidence produced by Plaintiffs to prove Heindl's alleged fraud in seeking these loans. Without more evidence of Heindl's alleged agreement to repay either "loan," the Court cannot conclude the School and Brother Loans were fraudulent.

## III.    Counter-Plaintiffs' Claims

Heindl and Steelcom allege Wendt and Counter-Defendants are liable for breach of fiduciary duty, conversion, and breach of contract. Heindl also seeks injunctive and declaratory relief determining Heindl is the owner of the CFC 90 patent, identified as USPTO Patent No. 8055481.

## A.    Breach of Fiduciary Duty

Heindl and Steelcom allege three causes of actions against Wendt and Counter-Defendants based on breach of fiduciary duty: (1) Heindl alleges Wendt and the Counter-Defendants owed him fiduciary duties as shareholders of PilePro Sales Corp. and breached these duties by engaging in a conspiracy to oust Heindl from PilePro Sales Corp.; (2) Heindl and Steelcom allege Wendt and Counter-Defendants owed them fiduciary duties as members of PilePro LLC and breached these duties by engaging in a conspiracy to oust Heindl from PilePro

LLC; and (3) Heindl alleges Wendt breached his fiduciary duty owed to Heindl as a shareholder of PilePro Sales Corp. by transferring the assets of PilePro Sales Corp. to PilePro Steel, LP.[18]

According to Heindl's first theory of breach of fiduciary duty, Wendt and Counter-Defendants,[19] as shareholders of PilePro Sales Corp., owed Heindl a fiduciary duty and breached this duty by conspiring to oust Heindl as a shareholder of PilePro Sales Corp., and thereafter refusing to recognize Heindl's continued ownership in PilePro Sales Corp. According to Heindl and Steelcom's second theory of breach of fiduciary duty, Wendt and Counter-Defendants breached a fiduciary duty owed to Heindl and Steelcom by conspiring to execute the 2005 and 2007 backdated Operating Agreements, which excluded Heindl and Steelcom as members of PilePro LLC.

Although Heindl and Steelcom's convoluted post-trial filings obscure the basis of their breach of fiduciary duty claims, it is clear from their counterclaim and proposed findings of fact and conclusions of law that the first two claims of breach of fiduciary duty are predicated on an alleged conspiracy to defraud Heindl and Steelcom. Accordingly, to prevail on his breach of fiduciary duty claims, Heindl and Steelcom must first prove Counter-Defendants engaged in a conspiracy to defraud Heindl and Steelcom, which in turn would breach any fiduciary duty they

---

[18] In a post-trial filing, Heindl and Steelcom additionally allege Counter-Defendants conspired with Wendt to breach the fiduciary duties he owed Heindl and Steelcom as the President of PilePro Sales Corp. and PilePro LLC. *See* Defs.' Post-Trial Brief [#179] at 29. Heindl and Steelcom erroneously assume they pled "conspiratorial breaches of fiduciary duties" in their counterclaim, but their counterclaim and proposed findings of fact and conclusions of law only allege direct breaches of fiduciary duty by conspiring to defraud Heindl and Steelcom. Even construing their Motion to Amend the Counterclaim to Conform to Proof at Trial as a request for the Court to add *two* additional causes of action—conspiracy to breach fiduciary duty and aiding and abetting breach of fiduciary duty—the Court is not inclined to humor Heindl and Steelcom's everything-but-the-kitchen-sink approach to this lawsuit. Although this case has been pending before this Court for more than three years, it was not until three weeks *after* trial that Heindl and Steelcom hatched this new theory of liability. Given the colossal mess of the post-trial briefings submitted by the parties, the Court—in a gleeful exercise of its discretion—DENIES Heindl and Steelcom's motion.

[19] Heindl asserted this claim against Wendt, Youngman, Youngman Trust 1, Youngman Trust 2, and Mike Feifarek as shareholders of PilePro Sales Corp., but not the remaining counter-defendants, because they are not and were never shareholders of PilePro Sales Corp.

owed to the company.[20] Because no conspiracy was established, the Court disposes of Heindl and Steelcom's first two claims without ever reaching the intricacies of whether Counter-Defendants, as minority shareholders of PilePro Sales Corp., owed Heindl a fiduciary duty.

Because PilePro Sales Corp. was incorporated in Nevada, under the internal affairs doctrine, Nevada law governs this dispute. Under Nevada law, "[a]ctionable civil conspiracy arises where two or more persons undertake some concerted action with the intent to accomplish an unlawful objective for the purpose of harming another, and damage results." *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 335 P.3d 190, 198–99 (Nev. 2014). Thus, in order to prevail, a plaintiff must provide evidence of "an explicit or tacit agreement between the alleged conspirators." *Id.*

Heindl has failed to produce sufficient evidence from which the Court can reasonably infer Counter-Defendants agreed and intended to harm Heindl. Indeed, at trial, the counter-defendants each testified they did not sign the backdated 2005 and 2007 Operating Agreements, which effectively ousted Heindl from PilePro LLC, with the intent to defraud Heindl. Moreover, Heindl has not provided the Court with any measurable basis for establishing damages. Accordingly, neither Wendt nor the counter-defendants may be held liable on Heindl's first claim for breach of fiduciary duty, because Heindl has failed to establish the necessary predicate of conspiracy upon which his first claim for breach of fiduciary duty rests.

---

[20] Plaintiffs argue the statute of limitations bar Heindl and Steelcom's breach of fiduciary claims predicated on a conspiracy to defraud Heindl and Steelcom. The statute of limitation for breach of fiduciary duty in Nevada is three years. *Shupe v. Ham*, 639 P.2d 540 (Nev. 1982) ("A breach of fiduciary duty is a fraud giving rise to the application of the three year statute of limitations."). Because the allegations regarding Wendt and Counter-Defendants' conspiracy to defraud Heindl of his interests in PilePro Sales Corp. and PilePro LLC occurred in April 2010, and the counterclaims were filed on March 4, 2013, the three-year statute of limitations does not bar Heindl and Steelcom's breach of fiduciary duty claims.

To be clear, the causes of actions alleged in Heindl and Steelcom's complaint, which the Court considers today, are breaches of fiduciary duty predicated on a conspiracy to defraud. They specifically claim damages "[b]y reason of [Counter-Defendants'] breaches of fiduciary duties." Counterclaim [#28] ¶ 57. They did not plead causes of action for conspiracy or fraud. As a result, the parties' briefing on the statute of limitations for conspiracy and fraud misses the mark.

As to Heindl and Steelcom's second claim of breach of fiduciary duty, Delaware law governs. In Delaware, a civil conspiracy requires "(1) [a] confederation or combination of two or more persons; (2) [a]n unlawful act done in furtherance of the conspiracy; and (3) [a]ctual damage." *In re Am. Int'l Grp., Inc.*, 965 A.2d 763, 805 (Del. Ch. 2009). It also requires knowledge of the conspiracy. *See In re Asbestos Litig.*, 509 A.2d 1116, 1120 (Del. 1986) (requiring at least "knowing participation"). While the evidence adduced at trial clearly establishes that Counter-Defendants signed the backdated 2005 and 2007 amendments to PilePro LLC's Operating Agreement, there is no evidence that they did this with the intention to harm Heindl. Each Counter-Defendant testified that they signed the operating agreement simply because Wendt, the company's President, requested them to. While Wendt may have harbored deleterious motives, his intent alone is not sufficient to establish an agreement between two or more persons. Accordingly, Heindl and Steelcom's second claim for breach of fiduciary duty likewise fails.

Heindl finally claims Wendt, as President of PilePro Sales Corp., breached the fiduciary duty he owed Heindl by converting the assets of PilePro Sales Corp. for his own personal benefit or for the benefit of PilePro Steel, LP. According to Heindl, "[t]he tortious conversion of the assets . . . of PilePro Sales Corp. by Wendt . . . for the apparent purpose of obliterating the value of PilePro Sales Corp., and, in addition, decimating any shareholder interest Heindl has in PilePro Sales Corp. is a breach of fiduciary duties that Wendt . . . owe to Heindl." Counterclaim [#28] ¶ 64.

Clearly, Wendt, as the President of PilePro Sales Corp., owed Heindl a fiduciary duty. *See W. Indus., Inc. v. Gen. Ins. Co.*, 533 P.2d 473, 476 (Nev. 1975) ("Certainly, a corporate officer and director has a fiduciary relationship with his corporation, . . . and thus owes a duty of

good faith, honesty, and full disclosure."). However, because this breach of fiduciary duty claim is predicated on Heindl's conversion claim, and the Court finds Heindl has failed to establish conversion, this claim must fail. *See infra* section III.B.

## B.    Conversion

Heindl brings this conversion claim against Wendt, alleging Wendt converted assets of PilePro Sales Corp. to use for his own personal benefit and for the benefit of PilePro Steel, LP. Specifically, Heindl claims Wendt transferred Modular Connectors and other assets belonging to PilePro Sales Corp. to his personal residence for use as inventory in the new PilePro entity, PilePro Steel, LP. He also alleges Wendt transferred cash from PilePro Sales Corp. for the purchase and renovation of a personal residence, which is held solely in Wendt's name.

To establish a claim for conversion of personal property under Texas law,[21] a plaintiff must prove: "(1) the plaintiff owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property." *Smith v. Maximum Racing, Inc.*, 136 S.W.3d 337, 341 (Tex. App.—Austin 2004, no pet.). Wrongful intent is not an essential element of conversion. *Thomas v. McNair*, 882 S.W.2d 870, 884 (Tex. App. —Corpus Christi 1994, no writ).

---

[21] The parties do not dispute Texas law governs the resolution of this issue. Under Texas law, a claim for conversion has a two-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a). At trial, Counter-Defendants asserted the affirmative defense of statute of limitations. However, the Court is unable to determine whether the statute of limitations bars Counter-Plaintiffs' claim, because Counter-Defendants have not asserted a relevant date for which Counter-Plaintiffs' cause of action accrued. Counter-Plaintiffs claim PilePro Steel, LP was formed sometime in 2010, and sometime thereafter Wendt converted PilePro Sales Corp.'s assets for PilePro Steel, LP's use and benefit. Without more information as to the accrual date, the Court cannot conclude the statute of limitations bars Counter-Plaintiffs' conversion claim.

While the Court finds that Heindl is a shareholder of PilePro Sales Corp. and therefore is legally entitled to his proportional share of the company, there is a dearth of evidence establishing that PilePro Sales Corp.'s inventory and cash assets were transferred to PilePro Steel, LP. Wendt testified that PilePro Steel, LP was created to "have another sales company in a different structure to move away from PilePro Sales Corp. and begin selling as PilePro Steel, LP." Transcript of Record at 217, *PilePro LLC, et al. v. Chang et al.*, 12-cv-829 (W.D. Tex. Oct. 21, 2015). However, Wendt's testimony does not establish by a preponderance of the evidence that he unlawfully transferred PilePro Sales Corp.'s assets to PilePro Steel, LP to be used as PilePro Steel, LP's new inventory. At most it indicates PilePro Steel, LP began acting as the new operational arm of the PilePro entities. There is absolutely no evidence in the record that Wendt's personal residence was purchased with converted funds or that Wendt is using it to house PilePro Sales Corp.'s inventory of Modular Connectors.

Because Heindl failed to prove Wendt transferred PilePro Sales Corp.'s assets to PilePro Steel, LP, the Court declines to grant Heindl a proportional interest in PilePro Steel, LP or a constructive trust in its assets.

## C.    Breach of Contract

Steelcom brings this breach of contract claim against Wendt and Counter-Defendants, alleging they breached express provisions of the PilePro LLC's 2004 Operating Agreement by conspiring to oust Steelcom from PilePro LLC and violating provisions of the Operating Agreement by taking certain actions which require the approval of at least eighty percent of the ownership interest in PilePro LLC.[22] Steelcom alleges it has suffered at least $3,000,000 worth

---

[22] Incredibly, Heindl and Steelcom attempted to slide in a new claim for breach of the implied covenant of good faith and fair dealing at trial and in a footnote contained in a post-trial briefing filed a month after trial. Mot. Amend [#186] at 5. This time, however, Counter-Plaintiffs have not even requested the Court to amend the counterclaim to conform to the proof produced at trial. The Court once again exercises its discretion and declines to

of damages, including its pro rata share of the money PilePro LLC improperly managed in contravention of the 2004 Operating Agreement and the pro rata share of any money distributed to Wendt and Counter-Defendants which was not distributed to Steelcom.

Under Delaware law, which governs the claim pursuant to a choice-of-law provision in the 2004 Operating Agreement, the elements of a breach of contract claim are: 1) a contractual obligation, 2) a breach of that obligation by the defendant, and 3) a resulting damage to the plaintiff. *See Newport Disc, Inc. v. Newport Elecs., Inc.*, No. N12C-10-228 MMJ CCLD, 2013 WL 5797350, at *3 (Del. Oct. 7, 2013); Defs.' Trial Ex. 502; *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678 (Tex. 1990) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2)).

Even if the Court was to find Wendt and Counter-Defendants breached an obligation imposed by the 2004 Operating Agreement, Steelcom cannot prevail on its claim because it failed to prove damages. "The law does not require certainty in the award of damages when a wrong has been proven and injury established. Responsible estimates that lack mathematical certainty are permissible so long as the Court has a basis to make a responsible estimate of damages." *All Pro Maids, Inc. v. Layton*, No. Civ.A. 058-N, 2004 WL 1878784, at * 11 (Del. Ch. Aug. 9, 2004). In this case, Steelcom fails to provide any measureable basis for calculating damages. Its expert witness only testified to the damages suffered by Steelcom in the aggregate as a result of Counter-Defendants' breaches of fiduciary duty, breaches of contract, and conversion. Steelcom offered nothing to establish to a reasonable certainty the damages it alone suffered, and as a result, Steelcom's breach of contract claim fails.

---

consider this new addition to Counter-Plaintiffs' claims. It stretches the imagination to consider why, in almost three years, Counter-Plaintiffs did not bring this claim to the Court's attention, or the why Counter-Plaintiffs' counsel did not have the professional courtesy to inform Plaintiffs of it before trial.

D.   **CFC 90 Patent**

Heindl seeks injunctive and declaratory relief determining that the CFC 90 patent, identified as USPTO Patent No. 8055481, belongs to Heindl, and Wendt, by registering it in PilePro Sales Corp.'s name, committed fraud. *See* Defs.' Trial Ex. 642. However, there is a dearth of evidence establishing that the registration of the CFC 90 patent in PilePro Sales Corp.'s name was fraudulent. Because the Court finds Heindl failed to prove Wendt fraudulently registered this patent, the Court declines to grant Heindl injunctive or declaratory relief.

**Conclusion**

Accordingly,

IT IS ORDERED that Counter-Plaintiff Heindl is a 34.5% shareholder in PilePro Sales Corp.;

IT IS FURTHER ORDERED that Counter-Plaintiff Heindl was a 34.5% member of PilePro LLC until his interest was transferred to Counter-Plaintiff Steelcom Limited;

IT IS FURTHER ORDERED that Counter-Plaintiff Steelcom Limited is a 34.5% member of PilePro LLC;

IT IS FURTHER ORDERED that Contexo is wholly or partially owned by PilePro LLC, Enrico Farroni, and Roland Harzenmozer;

IT IS FURTHER ORDERED that the March 25, 2010 Assignment Agreement was valid;

IT IS FURTHER ORDERED that Contexo is the lawful owner of all the non-U.S. patents at issue in this lawsuit;

IT IS FURTHER ORDERED that Plaintiffs' claims unjust enrichment and constructive trust are DENIED;

IT IS FURTHER ORDERED that Counter-Plaintiffs' request for injunctive and declaratory relief granting Heindl and Steelcom a constructive trust in assets allegedly converted by Wendt for the benefit of Wendt and PilePro Steel LP is DENIED;

IT IS FURTHER ORDERED that Counter-Plaintiff Heindl's request for injunctive and declaratory relief recognizing Heindl as the owner of the CFC 90 patent, identified as USPTO Patent No. 8055481, is DENIED;

IT IS FURTHER ORDERED that the parties' requests for attorneys' fees and costs are DENIED;

IT IS FURTHER ORDERED that Defendant's Motion for Order of Collateral Estoppel [#137] is DENIED;

IT IS FURTHER ORDERED that Plaintiffs' Unopposed Motion for Leave to File Amended Trial Witness List [#158] is GRANTED;

IT IS FURTHER ORDERED that Counter-Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction [#172] is DENIED;

IT IS FURTHER ORDERED that Counter-Defendants' Motion to Strike [#180] is DENIED;

IT IS FURTHER ORDERED that Plaintiff and Counter-Defendants' Motion for Partial Findings under Rule 52(c) [#182] is DENIED;

IT IS FINALLY ORDERED that Counter-Plaintiffs' Motion to Amend the Counterclaim to Conform to Proof at Trial [#186] is DENIED.

SIGNED this the __20th__ day of January 2016.

_Sam Sparks_

SAM SPARKS
UNITED STATES DISTRICT JUDGE